## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEFFREY FROMMER, LYUSEN (LOUIS) KRUBICH, DANIEL FRIED, and PAT CAPRA,<br><br>Plaintiffs,<br><br>v.<br><br>MONEYLION TECHNOLOGIES INC. and CONTINENTAL STOCK TRANSFER & TRUST COMPANY,<br><br>Defendants,<br><br>MONEYLION TECHNOLOGIES INC.,<br><br>Counterclaim Plaintiff,<br><br>v.<br><br>JEFFREY FROMMER, LYUSEN (LOUIS) KRUBICH, DANIEL FRIED, and PAT CAPRA,<br><br>Counterclaim Defendants.<br><br>MONEYLION INC.,<br><br>Third-Party Plaintiff,<br><br>v.<br><br>JEFFREY FROMMER, LYUSEN (LOUIS) KRUBICH, DANIEL FRIED, and PAT CAPRA,<br><br>Third-Party Defendants. | Case No. 1:23-cv-06339-JMF |

### PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS COUNTERCLAIMS AND THIRD-PARTY COMPLAINT

KATTEN MUCHIN ROSENMAN LLP
50 Rockefeller Plaza
New York, New York 10020
(212) 940-8800
*Counsel for Plaintiffs–Counterclaim/Third-Party Defendants*

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS ................................................................................................... 5

    I.     Facts Relating to the Closing Transaction.................................................................. 5

    II.    Facts Relating to the 2021 Earnout Transaction ...................................................... 7

    III.   Facts Relating to MoneyLion's Other Claims.......................................................... 9

LEGAL STANDARDS ....................................................................................................... 10

ARGUMENT ....................................................................................................................... 11

    I.     Count I Does Not State Any Cognizable Claim........................................................ 11

    II.    Count II Does Not State Any Cognizable Claim ...................................................... 12

    III.   Counts III and IV Do Not State a Claim for Fraud .................................................. 12

         A.  Closing Transaction ......................................................................................... 13

             1.    MoneyLion's claim is time-barred............................................... 13

             2.    MoneyLion cannot allege justifiable reliance ............................. 14

             3.    MoneyLion cannot allege<br>                   an actionable misrepresentation made with scienter ............................. 15

             4.    MoneyLion cannot allege damages causation.............................. 16

         B.  2021 Earnout Transaction ................................................................................ 17

    IV.   Count V Does Not State a Claim for Negligent Misrepresentation ....................... 19

    V.     Count VI Is Subject to Arbitration ........................................................................... 20

    VI.   Count VII Does Not State a Claim for Conversion.................................................. 21

    VII.  Most of MoneyLion's Claims in Count VIII<br>          Are Barred by Contract or as a Matter of Law,<br>          and Any That Survive Would Be Subject to Arbitration. .................................. 22

    VIII. Count IX Is Subject to Arbitration ........................................................................... 23

    IX.   Count XI [*sic*] Does Not State a Claim for Unjust Enrichment ........................... 24

CONCLUSION.................................................................................................................... 24

## **TABLE OF AUTHORITIES**

**Page**

**Cases**

*Anhui Konka Green Lighting Co. v. Green Logic LED Elec. Supply, Inc.*,
 No. 18-cv-12255 (PAE), 2019 WL 6498094 (S.D.N.Y. Dec. 3, 2019) ........................................... 14

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ................................................................................................................................ 10

*Ashland Inc. v. Morgan Stanley & Co., Inc.*,
 652 F.3d 333 (2d Cir. 2011) ................................................................................................................. 10

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ................................................................................................................................ 23

*Capax Discovery, Inc. v. AEP RSD Invs., LLC*,
 No. 1:17-cv-00500-CCR, 2020 WL 5815943 (W.D.N.Y. Sept. 30, 2020) .............................. 19, 20

*Chen-Oster v. Goldman, Sachs & Co.*,
 449 F. Supp. 3d 216 (S.D.N.Y. 2020) ................................................................................................. 21

*Compania Sud-Americana de Vapores, S.A. v. IBJ Schroder Bank & Tr. Co.*,
 785 F. Supp. 411 (S.D.N.Y. 1992) ....................................................................................................... 14

*Gould Paper Corp. v. Madisen Corp.*,
 614 F. Supp. 2d 485 (S.D.N.Y. 2009) ................................................................................................ 22

*Granite Partners, L.P. v. Bear, Stearns &Co.*,
 17 F. Supp. 2d 275 (S.D.N.Y. 1998) ................................................................................................... 24

*Grumman Allied Indus., Inc. v. Rohr Indus., Inc.*,
 748 F.2d 729 (2d Cir. 1984) ................................................................................................................. 14

*Han v. Fin. Supervisory*
 *Serv.*, No. 17CIV4383GBDBCM, 2018 WL 791353 (S.D.N.Y. Feb. 8, 2018) ............................. 12

*In re Columbia Tuition Refund Action*,
 523 F. Supp. 3d 414 (S.D.N.Y. 2021) ................................................................................................ 24

*In re LaBranche Sec. Litig.*,
 405 F. Supp. 2d 333 (S.D.N.Y. 2005) ................................................................................................ 16

*In re Lehman Bros. Sec. & ERISA Litig.*,
 799 F. Supp. 2d 258 (S.D.N.Y. 2011) ................................................................................................ 16

*Kwon v. Yun*,
 606 F. Supp. 2d 344 (S.D.N.Y. 2009) ................................................................................................ 19

*Landesbank Baden-Wurttemberg v. Goldman, Sachs & Co.*,
 821 F. Supp. 2d 616 (S.D.N.Y. 2011)
 *aff'd*, 478 F. App'x 679 (2d Cir. 2012) ......................................................................................... 10, 19

*LPPAS Representative, LLC v. ATH Holding Co., LLC*,
 No. CV 2020-0241-KSJM, 2020 WL 7706937 (Del. Ch. Dec. 29, 2020)
 *aff'd*, 76 A.3d 808 (Del. 2013) ......................................................................................................... 13, 22

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Doe*,
  868 F. Supp. 532 (S.D.N.Y. 1994) ................................................................. 12

*Newmont Mining Corp. v. AngloGold Ashanti Ltd.*,
  344 F. Supp. 3d 724 (S.D.N.Y. 2018) ............................................................ 10

*Nicosia v. Amazon.com, Inc.*,
  834 F.3d 220 (2d Cir. 2016) ............................................................................ 5

*One Commc'ns Corp. v. JPMorgan SBIC LLC*,
  381 F. App'x 75 (2d Cir. 2010) ..................................................................... 16

*Prairie Cap. III, L.P. v. Double E Holding Corp.*,
  132 A.3d 35 (Del. Ch. 2015) .......................................................................... 13

*S. Cherry St., LLC v. Hennessee Grp., LLC*,
  573 F.3d 98 (2d Cir. 2009) ...................................................................... 10, 11

*Schillinger Genetics, Inc. v. Benson Hill Seeds, Inc.*,
  C.A. No. 2020-0260-MTZ, 2021 WL 320723 (Del. Ch. Feb. 1, 2021) ............ 18

*Steinberg v. Sherman*,
  No. 07 Civ. 1001(WHP), 2008 WL 2156726 (S.D.N.Y. May 8, 2008) ............ 20

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ....................................................................................... 10

*UST Private Equity Invs. Fund v. Salomon Smith Barney*,
  288 A.D.2d 87, 733 N.Y.S.2d 385 (1st Dep't 2001) ..................................... 20

*Vazquez Perez v. Decker*,
  No. 18-CV-10683 (AJN), 2019 WL 4784950 (S.D.N.Y. Sept. 30, 2019) ........ 12

*Zamora v. FIT Int'l Grp. Corp.*,
  834 F. App'x 622 (2d Cir. 2020) ................................................................... 21

**Statutes and Regulations**

17 C.F.R. § 240.10b-5 ......................................................................................... 12

28 U.S.C. § 2201(a) ............................................................................................. 11

Federal Arbitration Act, 9 U.S.C. § 3 .................................................................. 1

Securities Exchange Act, 15 U.S.C. § 78j(b) ...................................................... 12

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ............................................................ 1

Federal Rule of Civil Procedure 57 (Advisory Committee Notes) ..................... 11

Federal Rule of Civil Procedure 9(b) ............................................................. 2, 10

iii

Plaintiffs–Counterclaim/Third-Party Defendants Jeffrey Frommer, Lyusen (Louis) Krubich, Daniel Fried, and Pat Capra (collectively, "Sellers"), by and through their attorneys, hereby submit this Memorandum of Law in Support of Their Motion to Dismiss Counterclaims and Third-Party Complaint, along with the Declaration of Nathaniel Ament-Stone, dated September 21, 2023, and respectfully request an Order: (i) dismissing Counts I, II, III, IV, V, VII, and XI of the Counterclaims of Defendant–Counterclaim Plaintiff MoneyLion Technologies Inc. ("MoneyLion") (ECF No. 43 ("Countercl.")) in their entirety, pursuant to Federal Rule of Civil Procedure 12(b)(6); (ii) dismissing Count VIII with respect to the allegations in paragraphs 220-223 and 228, and dismissing or staying Count VIII pending arbitration with respect to the allegations in paragraphs 224-227 and 229 pursuant to the Federal Arbitration Act, 9 U.S.C. § 3; (iii) dismissing or staying Counts VI and IX in their entirety, also pending arbitration; and (iv) dismissing the Third-Party Complaint of MoneyLion Inc. ("MLI") in its entirety.

## PRELIMINARY STATEMENT

MoneyLion brings ten purported counterclaims, each of which is either (a) inadequately pleaded, (b) otherwise barred as a matter of law or contract, or (c) subject to arbitration. As such, the Counterclaims should all be dismissed.

Count I seeks an illusory advisory opinion on an aspect of MoneyLion's defense to Sellers' 2022 Earnout Payment claims, and Count II an inadequately pleaded preliminary injunction, although both are styled as claims for a declaratory judgment. Both are plainly improper requests and both counts should be dismissed.

Counts III and IV, the heart of MoneyLion's case, purport to state claims for securities fraud and common-law fraud, which MoneyLion does not and cannot sufficiently allege for numerous reasons. MoneyLion's first claim relates to the closing of MoneyLion's acquisition of Sellers' interest in Malka Media Group LLC ("Malka") pursuant to the November 15, 2021

Membership Interest Purchase Agreement (the "MIPA").  This Closing Transaction claim is barred

by the MIPA and, in any event, does not satisfy <u>any</u> of the required elements of fraud; nor does

MoneyLion plead fraud with particularity, as required by Federal Rule of Civil Procedure 9(b).

First, Article VIII of the MIPA required MoneyLion to assert any claim with respect to an

alleged breach of the detailed representations and warranties by Sellers no later than May 15, 2023.

Yet MoneyLion's only timely notice did not reference its current fraud claims relating to GAAP

and ASC 606.  Thus, these claims are barred by contract.

Second, under the MIPA's express terms, MoneyLion represented that it was "relying

solely on its own investigation . . . and not on any information provided or to be provided by"

Sellers—let alone on the stated opinions of independent accountants Curran & Company LLP

("Curran"), which opinions now form the crux of MoneyLion's fraud claims.  During due

diligence, MoneyLion identified "numerous" Malka deviations from GAAP and requested that

they be reflected in the MIPA, which Malka obliged.  Courts routinely enforce non-reliance

provisions against sophisticated parties who had every opportunity as part of the acquisition

process to review a counterparty's books and records and raise any questions or concerns.  Thus,

as a matter of law, MoneyLion could not reasonably rely on the representations that it now alleges

were wrong.

Third, the opinions by Curran in the Disclosure Schedules that (1) it was not aware of any

Malka deviations from GAAP requiring "material modifications" of the financial statements and

(2) Malka followed ASC 606 were not actionable misrepresentations by Curran, and certainly not

by any of the four Sellers, made with scienter.  Indeed, MoneyLion <u>does not allege that any Seller</u>

<u>was even aware of Curran's stated opinions</u> at the time.  Further, MoneyLion does not adequately

allege that such statements misrepresented any material fact, since MoneyLion had complete

information from its due diligence about Malka's accounting practices and how they did not strictly follow GAAP or ASC 606.  There are no allegations connecting any Seller to Curran's statements or suggesting that any Seller acted with scienter.

Fourth, Malka was sold for a negotiated price consisting of a mix of cash and equity consideration, which had no connection to any accounting figures that might be affected by Malka's degree of deviation from GAAP or ASC 606.  Therefore, even putting aside other fatal defects in MoneyLion's fraud claims, MoneyLion also cannot (and does not even attempt to) show that it was damaged as a result of any mistaken view by Curran as to the precise accounting principles followed historically by Malka.  This claim is deficient in every way.

MoneyLion's other fraud claim concerns the 2021 Earnout Transaction derived from Malka's post-closing 2021 financial statements, and is also barred by the MIPA.  Once Malka was acquired, its financial team created a new, GAAP-conforming set of books for consolidation within MoneyLion's financials.  At the same time, Malka continued to run its business using its historical accounting methods, and maintained a non-GAAP-conforming set of books for earnout purposes. MoneyLion held monthly meetings with Malka's Head of Finance and executives, and had ample opportunity to compare the two sets of figures and make any necessary adjustments.

Section 2.06(b) of the MIPA prescribed detailed procedures and deadlines for MoneyLion to review Malka's 2021 financials and use them to prepare the 2021 Revenue and EBITDA Statement for possible earnout purposes; and for the parties to negotiate regarding any disagreement, and to submit any unresolved dispute to an independent accountant for final determination.  The parties did not require such a resolution because MoneyLion never challenged the numbers related to the 2021 Earnout Transaction.  This is significant because, at that time, MoneyLion had actual notice of (i) Malka's respective GAAP and non-GAAP numbers and (ii)

Malka's Accounting Principles and their dissimilarities from GAAP and ASC 606.  Although
MoneyLion enjoyed unfettered access to Malka's accountants, employees, and books and records,
it did not raise any concerns relating to Sellers' figures or deviations from GAAP.  As such,
MoneyLion is now barred from disputing the 2021 Earnout Transaction or clawing back the issued
MoneyLion shares then worth $10 million.

 MoneyLion's other claims fail for a variety of reasons:

- Count V recasts Counts III and IV as negligent misrepresentation, but in addition to sharing all the same fatal deficiencies as Counts III and IV, this claim also fails because New York courts require proof of a special relationship that counterparties to an arm's-length transaction cannot show.

- Counts VI and IX raise employment- and termination-related claims that are subject to arbitration, pursuant to Frommer's and Krubich's Employment Agreements with MoneyLion.  With respect to Count IX, MoneyLion also does not adequately allege any damages.

- Count VII offers a bare recitation of the elements of conversion, but never alleges a wrongful exercise of dominion over any property lawfully belonging to MoneyLion—instead, effectively duplicating MoneyLion's barred and deficient fraud claims under this separate heading.

- Count VIII contains a mix of purported breach-of-contract claims, all of which are either (a) barred by Article VIII as untimely indemnification demands or (b) subject to arbitration as employment- and termination-related disputes.

- Count XI (unjust enrichment) is barred by the existence of the MIPA.

 Finally, MLI purports to assert a third-party complaint, but the pleading is devoid of any
claims specific to MLI.  MLI cannot bring MoneyLion's claims, as it was not a party to the MIPA
or otherwise involved in the relevant events.  Its complaint should be dismissed in its entirety.

 Accordingly, MoneyLion and MLI have not pleaded any viable claims, and each of the
Counterclaims and the Third-Party Complaint should be dismissed.

## STATEMENT OF FACTS[1]

### I.   Facts Relating to the Closing Transaction

On November 15, 2021, Sellers and MoneyLion entered into the MIPA (Ex. 1).  Section 4.08 of the MIPA provides that MoneyLion "further acknowledges and agrees that, except as expressly provided in this Agreement, [MoneyLion] is relying solely on its own investigation in entering into this Agreement  . . . and not on any information provided or to be provided by the Seller Parties or [Malka]."

The MIPA defines Malka's "Accounting Principles" in Schedule A, which details the company's historical accounting practices to be followed prospectively in preparing its financial statements.  Schedule A states that Malka follows U.S. GAAP with exceptions including: "the Company's historical revenue recognition principles, which require the Company to recognize into revenue noncancelable deposits on contracts, . . . and recognize the remaining revenue on such contracts as milestones are attained"; "the Company's historical cost recognition principles associated with such revenue, which require the Company to recognize costs on contracts as incurred"; and exceptions relating to invoiced expenses, payroll, credit card expenses, and capitalized expenses and depreciation, along with several described "Specific Policies."

Schedule B defines Malka's "Revenue and EBITDA Calculation Principles" for use in determining Sellers' eligibility for a possible earnout payment.  On October 29, 2021, amid the due-diligence process and the parties' efforts to finalize the acquisition, Malka sent MoneyLion a revised draft of Schedule B that struck references to GAAP and ASC 606 and clarified the company's revenue-recognition principles.  (Ex. 3.)

---

[1]     These facts are taken from the Counterclaims and Third-Party Complaint, and from documents that the Court may properly consider under Rule 12.  *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230-31 (2d Cir. 2016) (court may consider documents on whose terms and effects plaintiff relied).

On November 4, 2021, MoneyLion's counsel advised Malka that MoneyLion's forensic

accountants had observed numerous deviations from GAAP in Malka's historical books:

> With respect to the Accounting Principles, the Company is essentially making the representation that its financial statements have been historically prepared under GAAP except revenue recognition and contract costs. However, based on the diligence, the Company operates an [*sic]* cash basis with numerous other GAAP deviations identified, including lack of accruals for commissions, payroll, professional fees, pre-paid licenses and pre-paid insurance. So we expect all Accounting Principles to reflect all non-GAAP items (not just those listed in the previous sentence) or the Accounting Principles to acknowledge that the business operates on a cash basis.
>
> To that end, can your client please revise Schedule A to include those additional areas, aside from revenue recognition and contract costs?

(Ex. 4.)  Malka then revised the draft Schedule A accordingly.

At the time of the acquisition, Malka's Head of Finance, Matthew Basdekis (who still

serves in this role at MoneyLion), did not read Curran's notes to the 2019 and 2020 financial

statements—including Curran's opinions that Malka recognized revenue in accordance with ASC

606 and that Curran was "not aware of any material modifications that should be made to the"

financial statements "in order for them to be in accordance with" GAAP.  (Countercl. ¶ 106.)

<u>MoneyLion does not allege that Sellers were aware of Curran's statements</u>.

Article VIII of the MIPA provides an 18-month period for asserting any alleged breach of

most representations and warranties, which is subject to a detailed indemnification process.  May

15, 2023 was MoneyLion's deadline to request indemnification.  On that date, MoneyLion sent a

letter (the "Notice of Claim") purporting to (i) give notice of claims for Sellers' alleged breaches

under Sections 3.04, 3.06, 3.12, 3.14, and 3.17 of the MIPA, and (ii) reserve MoneyLion's "right

to supplement or revise this Notice of Claim from time to time."  (Ex. 5 at 1-3.)  The claim under

Section 3.06 was narrow—that Malka's reported gross profit allegedly "did not include the cost of

employees that were billed to clients to generate revenue." (*Id.* at 2.)  The letter made no mention of GAAP, ASC 606, Schedule A, or any representations by independent accountants.

On June 6, 2023, Sellers replied noting, among other points, that: (i) MoneyLion's claims regarding Sections 3.06, 3.12, and 3.14 were disproved by the fact of Malka's relevant disclosures in Schedule A and the Disclosure Schedules (Ex. 2); (ii) MoneyLion had not asserted any losses or obligations as to Section 3.04; and (iii) the Section 3.17 issue arose months after the MIPA was executed.  (Ex. 6.)

On July 20, 2023—66 days after the contractual deadline for its indemnification claims— MoneyLion purported to expand its claim under Section 3.06, alleging that Sellers had misrepresented both Malka's gross profit <u>and</u> its "compliance with U.S. GAAP and ASC 606 in connection with [Malka's] financial statements for 2019 and 2020."  (Ex. 7 at 1-2.)

## II.   <u>Facts Relating to the 2021 Earnout Transaction</u>

In the MIPA, the parties agreed that MoneyLion would provide to Sellers additional shares valued at $10 million if Malka achieved certain financial targets in 2021.  In particular, Section 2.06(b) of the MIPA outlines a procedure to determine if Malka achieved the financial targets. Under that section, within 30 days of receipt of Malka's year-end financial statements, MoneyLion was required to prepare a Revenue and EBITDA Statement in accordance with Schedule B. Notably, under Schedule B, revenue was to be calculated according to Malka's "historical revenue recognition principles," and there is no reference to GAAP.  (Ex. 1 at Sched. B.)

Following MoneyLion's submission of the 2021 Revenue and EBITDA Statement, Sellers had 45 days to review and object to MoneyLion's calculations.  (Ex. 1 § 2.06(b)(iii).)  If Sellers did not object, then MoneyLion's calculations would be "deemed final and to have been accepted." (*Id.*)  If Sellers did object to the calculations, then Sellers would have to deliver a statement detailing each disputed item or amount, and the parties would then attempt to resolve any dispute

within 30 days.  If the parties could not resolve their dispute, then all outstanding disputes were to be submitted to an independent accountant, who would then "make a written determination" resolving the dispute no later than 30 days after receiving each party's written submission.  This determination would be "binding and conclusive upon the Parties to this Agreement with respect to that disputed matter."  (*Id.* § 2.06(b)(iv).)

As a public company, MoneyLion was required to report its finances in accordance with GAAP.  (Countercl. ¶ 84.)  Malka, parallel to its use of the Accounting Principles for internal bookkeeping purposes, therefore also prepared a set of GAAP-based financials to be shared with MoneyLion.  (*Id.* ¶¶ 84, 87.)  MoneyLion's Form 10-K for 2021 specified that its financial statements were prepared in conformity with GAAP, and reported $5 million in revenue attributable to the then–newly acquired Malka business.  (Ex. 8.)  MoneyLion's Form 10-Q for the first quarter of 2022 reiterated that its financial statements were prepared in accordance with GAAP.  (Ex. 9.)  Thus, MoneyLion reported GAAP-based consolidated revenue and expenses in its securities filings, which incorporated Malka's GAAP-conforming figures.

Beginning in March 2022, MoneyLion held monthly meetings with Basdekis and certain Sellers, during which MoneyLion's finance team would review Malka's monthly performance based upon the GAAP-conforming numbers submitted by Malka executives.  (Countercl. ¶ 84.)  MoneyLion also had complete access and oversight to Malka's parallel non-GAAP set of numbers based on its Accounting Principles, which continued to be prepared and maintained for earnout purposes in accordance with Schedule B.

MoneyLion reviewed Malka's year-end financials and determined that Malka satisfied the earnout targets.  On March 31, 2022, MoneyLion submitted the 2021 Revenue and EBITDA Statement, advising Sellers that they had achieved the revenue and EBITDA targets required for

the maximum earnout payment of shares valued at $10 million, to be paid in four quarterly tranches.  MoneyLion knew at the time that, pursuant to Schedules A and B, Sellers had used Malka's Accounting Principles, not GAAP or ASC 606.  At no point did MoneyLion question Sellers' numbers, even though it owned Malka and could directly compare the GAAP and non-GAAP sets of figures, and could ask legacy Malka employees or independent accountants for any needed information.  Therefore, the parties had no need to discuss any objections, engage in any further negotiations, or refer any dispute.  Because there was no dispute regarding Malka's financial statements, the 2021 earnout calculations were deemed "final," and MoneyLion issued the additional shares to Sellers in accordance with Section 2.06(b)(v) of the MIPA.

**III.    Facts Relating to MoneyLion's Other Claims**

As noted above, MoneyLion's Notice of Claim asserted purported claims arising out of Sections 3.04, 3.12, 3.14, and 3.17 of the MIPA, which are now among its allegations in Count VIII.  *See supra* at 6-7.

As a result of the Malka acquisition, Sellers became employees of MoneyLion.  Frommer and Krubich were parties to Employment Agreements with MoneyLion (Exs. 10-11) which contained mandatory arbitration provisions.  In particular, Section 5.1 of each agreement provided that "[a]ny and all disputes, claims or controversies ('Claims') arising out of or relating to this Agreement . . ., or the Executive's employment or its termination, . . . shall be resolved by binding arbitration" before JAMS.  The provision specified that "[t]he Claims to be arbitrated include, but are not limited to: claims for wages or other compensation due; claims for breach of any contract or covenant (express or implied); tort claims . . ." (emphasis added).

On or about May 19, 2023, MoneyLion sent notices of termination for purported cause to all four Sellers, alleging that they had used corporate funds to pay for certain personal expenses. On May 23, counsel for Sellers promptly responded in writing to deny any wrongdoing and to

request the details about the expenses so that Sellers could confirm if any were truly personal, and if so, make prompt reimbursement to the company.  (Ex. 12.)

On May 25, 2023, MoneyLion replied, declining to provide the requested information, and adding a new charge that Sellers were in violation of "their on-going restrictive covenant obligations under the [MIPA] and their former employment agreements."  (Ex. 13.)  To this day, MoneyLion has yet to provide Sellers with the underlying billing records or expense submissions.

## LEGAL STANDARDS

To avoid dismissal, a claimant must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *S. Cherry St., LLC v. Hennessee Grp., LLC*, 573 F.3d 98, 110 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  However, claims for fraud, such as Counts III and IV of MoneyLion's Counterclaims, are subject to the heightened pleading standards of Rule 9(b).  This means that MoneyLion "must state with particularity the circumstances constituting fraud," Fed. R. Civ. P. 9(b), including by alleging a misrepresentation made by Sellers with scienter, justifiable reliance thereon by MoneyLion, and damages causation.  *See Ashland Inc. v. Morgan Stanley & Co., Inc.*, 652 F.3d 333, 338-39 (2d Cir. 2011) (affirming dismissal, where plaintiffs did not adequately allege reasonable reliance); *Landesbank Baden-Wurttemberg v. Goldman, Sachs & Co.*, 821 F. Supp. 2d 616, 621-22 (S.D.N.Y. 2011) (dismissing and noting that Rule 9(b) requires plaintiffs to allege the "who, what, when, where, and how" of fraud), *aff'd*, 478 F. App'x 679 (2d Cir. 2012).

Claimants alleging securities fraud must also plead facts that create a "strong inference" of scienter, meaning that the alleged fraudster's knowing or reckless state of mind must be "at least as compelling as any opposing inference of nonfraudulent intent."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007); *see also Newmont Mining Corp. v. AngloGold Ashanti Ltd.*, 344 F. Supp. 3d 724, 745-46 (S.D.N.Y. 2018) (allegations provided "no plausible motive"

for alleged knowing misrepresentation).  A claimant must adequately allege that the fraudster either "(1) benefited in a concrete and personal way from the purported fraud; (2) engaged in deliberately illegal behavior; (3) knew facts or had access to information suggesting that their public statements were not accurate; or (4) failed to check information they had a duty to monitor." *South Cherry Street*, 573 F.3d at 109, 114 (affirming dismissal, where allegations were more consistent with negligence than recklessness or intentional deceit).

## ARGUMENT

### I.  Count I Does Not State Any Cognizable Claim

Count I of the Counterclaims amounts to a request for an illusory advisory opinion regarding an aspect of MoneyLion's defense to Sellers' 2022 Earnout Transaction claims.  First, this count is improper, because it would not provide a final judgment as required by 28 U.S.C. § 2201(a).  If MoneyLion prevailed on Count I, the proposed declaration concerning accounting methodologies would "not be effective in settling the controversy," Fed. R. Civ. P. 57 (Advisory Committee Notes)—since the parties still dispute how to apply the Accounting Principles, and the extent to which Schedule B revenue-recognition items would render an accountant's methodology irrelevant to determining Sellers' entitlement to a 2022 Earnout Payment.

Second, regarding the 2021 Earnout Transaction, the MIPA provides that the transaction is "final" and there is no mechanism to renegotiate it now.  MoneyLion was able to review Malka's respective GAAP-based and non-GAAP-based sets of books, and to discuss them with knowledgeable employees and accountants; and, following its review, MoneyLion issued the shares.  The matter is "final" under the MIPA.

Finally, as for 2022, the proposed declaration would only cause unnecessary delay and undermine judicial economy by creating a two-step procedure, where this Court can presently decide Sellers' entitlement to the 2022 Earnout Payment in one step: by adjudicating Sellers' Third

11

and Fourth Causes of Action.   The parties' methodological disagreements can be developed in discovery, including through testimony by accountants, and do not require a separate, post-judgment accounting process.   If MoneyLion's proposed approach is correct and would so alter Malka's numbers as to negate Sellers' entitlement to the payment, then this Court will enter a judgment for MoneyLion on Sellers' Third and Fourth Causes of Action.   Otherwise, Sellers would prevail.   Thus, Count I tries to recast an integral part of MoneyLion's <u>defense</u> as a separate claim, and serves no purpose.   This count has no basis in law and should be dismissed.   *See*, *e.g.*, *Han v. Fin. Supervisory Serv.*, No. 17CIV4383GBDBCM, 2018 WL 791353, at *3 (S.D.N.Y. Feb. 8, 2018) (dismissing claim for declaratory relief which effectively sought advisory opinion).

## II.   <u>Count II Does Not State Any Cognizable Claim</u>

Count II seeks a declaratory judgment that Sellers' vested shares "shall remain restricted . . . until final judgment of the Court allowing MLI to invalidate those shares as prayed for herein."   (Countercl. ¶ 175.)   Courts in this district have concluded that either "preliminary declaratory relief" is a <u>nonexistent remedy</u>, *see Vazquez Perez v. Decker*, No. 18-CV-10683 (AJN), 2019 WL 4784950, at *10-11 (S.D.N.Y. Sept. 30, 2019), or if it does exist, it is subject to the same standards as a preliminary injunction.   *See Merrill Lynch, Pierce, Fenner & Smith Inc. v. Doe*, 868 F. Supp. 532, 535-36 (S.D.N.Y. 1994).   MoneyLion does not even attempt to plead the elements for a preliminary injunction.   The MIPA also does not authorize the parties to seek injunctive remedies, other than specific performance to enforce the terms of the MIPA—and MoneyLion's maintenance of the restrictive legend would not constitute any specific performance, since it is not permitted by the MIPA.   (*See* ECF Nos. 17, 46.)   Count II fails and should be dismissed.

## III.   <u>Counts III and IV Do Not State a Claim for Fraud</u>

MoneyLion purports to allege securities fraud in Count III, pursuant to Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5; and

common-law fraud in Count IV.  The elements of MoneyLion's fraud counts are similar, yet there are important analytical distinctions between the claims as they relate to the (i) Closing Transaction and (ii) 2021 Earnout Transaction.  As such, below, Sellers discuss Counts III and IV together while separating discussions of the two transactions.

### A.  Closing Transaction

#### 1.  *MoneyLion's claim is time-barred.*

MoneyLion's claim regarding the Closing Transaction is inadequately alleged and fatally deficient for numerous reasons.  First, Section 8.09 of the MIPA provides that indemnification under Article VIII is MoneyLion's <u>exclusive</u> remedy for any losses relating to the Malka acquisition, and Sections 8.01 and 8.03 provide that most of Sellers' representations and warranties would survive through May 15, 2023.  MoneyLion's fraud claims were asserted after that date and so must be dismissed as time-barred.

The MIPA is governed by Delaware law.  (Ex. 1 § 9.10.)  Delaware courts reject attempts by would-be indemnitees to unilaterally extend claim deadlines by including catchall reservation-of-rights language in their notice letters, because "allowing the purchaser to ignore the contractual deadline and make late claims . . . 'would constitute a unilateral rewriting of the contract and is impermissible.'"  *LPPAS Representative, LLC v. ATH Holding Co., LLC*, No. CV 2020-0241-KSJM, 2020 WL 7706937, at *8 (Del. Ch. Dec. 29, 2020) (citation omitted), *aff'd*, 76 A.3d 808 (Del. 2013)); *see also Prairie Cap. III, L.P. v. Double E Holding Corp.*, 132 A.3d 35, 66 (Del. Ch. 2015) ("To permit the Buyer to treat a notice relating to claims about March 2012 as a placeholder for later asserted claims regarding earlier time periods would contravene the notice requirement.").

MoneyLion's Notice of Claim asserted numerous claims for indemnification—none of which mentioned GAAP, ASC 606, Schedule A, or any alleged misrepresentations as to how revenue was booked.  On July 20, MoneyLion asserted a new, untimely claim regarding GAAP

13

and ASC 606, which forms the basis for MoneyLion's fraud claims here. The MIPA is clear that because these claims were not asserted by May 15, they were not preserved and must be dismissed.

### 2. *MoneyLion cannot allege justifiable reliance.*

Second, Section 4.08 of the MIPA serves as a complete bar: MoneyLion represented that it was "relying solely on its own investigation . . . and not on any information provided or to be provided by" Sellers. Indeed, 11 days before the MIPA was executed, MoneyLion's counsel requested revisions to the draft Schedule A to enumerate Malka's additional historical deviations from GAAP—apparently, as reflected in the company's accounting records—and Malka obliged. (Ex. 4.) This demonstrates that MoneyLion's forensic accountants studied the underlying transactions to the Curran financial statements and acknowledged that Malka's historical practices substantially deviated from GAAP. Nowhere in its pleading does MoneyLion address or refute its own counsel's actual knowledge that Malka did not follow GAAP.

"Where sophisticated businessmen engaged in major transactions enjoy access to critical information but fail to take advantage of that access, New York courts are particularly disinclined to entertain claims of justifiable reliance." *Grumman Allied Indus., Inc. v. Rohr Indus., Inc.*, 748 F.2d 729, 737 (2d Cir. 1984). In *Grumman*, the Second Circuit affirmed dismissal where the plaintiff had "enjoyed unfettered access to Flexible's plants, personnel and documents" and "possessed the legal, technical and business expertise necessary to make effective use of that access." *Id.*; *see also Anhui Konka Green Lighting Co. v. Green Logic LED Elec. Supply, Inc.*, No. 18-cv-12255 (PAE), 2019 WL 6498094, at *9 (S.D.N.Y. Dec. 3, 2019) (granting in part motion to dismiss fraud claims for similar reasons); *Compania Sud-Americana de Vapores, S.A. v. IBJ Schroder Bank & Tr. Co.*, 785 F. Supp. 411, 419 (S.D.N.Y. 1992) (dismissing fraud claim where plaintiff "had access to the critical information underlying its fraud claim and, had it

exercised ordinary intelligence or made simple inquiries," it "would have been able to discover the alleged misrepresentations.").

Not only was MoneyLion a sophisticated party that expressly represented it was relying solely on its own investigation; Sellers also gave MoneyLion and its accountants (which included the leading advisory firm CFGI) unrestricted access to Malka's books and records, accountants, and officers, and a comprehensive virtual data room, before the closing. MoneyLion had every opportunity to ask additional questions about Malka's degree of conformance to GAAP and ASC 606, as well as about any perceived inconsistencies between (a) Schedule A and (b) Curran's opinions in the Disclosure Schedules. MoneyLion cannot now renounce its own representations in the MIPA and assert that it relied on a third party's statements that it knew were slightly "off."

In any event, MoneyLion also <u>had GAAP-based figures for Malka</u>, and included them in its public filings. (Countercl. ¶¶ 84, 87; Exs. 8-9.) MoneyLion cannot allege justifiable reliance, so Counts III and IV fail as a matter of law.

### 3. *MoneyLion cannot allege an actionable misrepresentation made with scienter.*

Sellers did not make any actionable misrepresentation. First, MoneyLion identifies a handful of items that it contends were treated differently from what the Accounting Principles prescribed. But the parties communicated extensively about Malka's application of its Accounting Principles, including at due-diligence meetings. Yet even Basdekis—who was primarily responsible for informing MoneyLion about the Accounting Principles—<u>was not aware of Curran's opinions</u> about GAAP or ASC 606 in its Review of the Disclosure Schedules. (Countercl. ¶ 106.) MoneyLion does not allege that <u>any</u> of the four Sellers, none of whom is an accountant, knew about Curran's opinions.

Second, for the same reasons MoneyLion cannot allege justifiable reliance, Curran's opinions are ultimately immaterial. The unaudited 2019 and 2020 financials were not prepared in connection with the Malka acquisition. Before the MIPA was executed, the parties had revised Schedule A to specify Malka's deviations from GAAP (at MoneyLion's request) and deleted references in Schedule B to ASC 606. (Ex. 3; Ex. 4.) MoneyLion had access to all relevant underlying information during due diligence.

Where fraud allegations are based on an independent accountant's written "opinion that the audit complied with . . . broadly stated standards" such as GAAP, "allegations that a company violated GAAP in preparing its financial statements are not sufficient, in and of themselves," to make out a fraud claim. *See In re Lehman Bros. Sec. & ERISA Litig.*, 799 F. Supp. 2d 258, 300, 303 (S.D.N.Y. 2011); *see also In re LaBranche Sec. Litig.*, 405 F. Supp. 2d 333, 362 (S.D.N.Y. 2005) ("[A]llegations concerning GAAP violations, absent sufficient allegations of fraudulent intent, are not sufficient to properly allege scienter.") (citation omitted) (dismissing fraud allegations concerning GAAP violations).

*One Commc'ns Corp. v. JPMorgan SBIC LLC*, 381 F. App'x 75 (2d Cir. 2010), is also instructive. In that case, a buyer pointed to an alleged misrepresentation in a merger agreement that the target's financials were prepared in accordance with GAAP, but did not allege with particularity how or why the challenged accounting practices or allegedly inflated EBITDA were fraudulent. The Second Circuit affirmed dismissal. *See id.* at 79-80. Here, MoneyLion's claim additionally fails because MoneyLion cannot allege an actionable misrepresentation by Sellers, let alone that the facts give rise to a "strong inference" of scienter, as required for securities fraud.

### 4.     *MoneyLion cannot allege damages causation.*

Yet another fatal defect in the Closing Transaction claim is that MoneyLion does not adequately allege any resulting injury. This is because the Closing Transaction price (a mix of

cash and shares) involved negotiated sums—none of which was tied to any calculation of Malka's gross profits, revenues, EBITDA, or any other figure contained in Malka's financial statements, and certainly none dependent on the degree of Malka's conformance with GAAP or ASC 606. Even if MoneyLion could otherwise plead its counterclaim with particularity (it cannot), its time-barred and contractually waived alleged reliance on a third party's equivocal statements <u>ultimately had no effect</u> on the consideration paid by MoneyLion for acquiring Malka.

Moreover, MoneyLion's failure to adequately plead a loss from the alleged misrepresentations is not a drafting oversight. MoneyLion does not allege that Malka's invoices were fictitious or its revenues unrealized; different accounting practices only would have affected the <u>timing</u> of revenue recognition. That is, restating Malka's revenues to conform with GAAP and ASC 606 would likely move some revenue from 2020 into 2021, and from 2021 into 2022. Depending how Schedule B accounting affected each year, restating revenues in accordance with GAAP and ASC 606 might even have enhanced Sellers' earnout potential in one or both earnout years. MoneyLion's failure to monetize its claimed losses, when MoneyLion had both sets of books (GAAP-based and Accounting Principles–based), is a de facto admission that any professed misunderstanding about Malka's Accounting Principles did not cause net damages to MoneyLion.

Therefore, MoneyLion's Closing Transaction fraud claim is contractually barred and substantively deficient for numerous reasons. MoneyLion cannot plead any set of facts that would overcome the parties' binding representations and claims procedures.

## B.  2021 Earnout Transaction

MoneyLion also alleges that Sellers defrauded it with respect to the figures underlying the 2021 Revenue and EBITDA Statement that it prepared. This counterclaim, too, is barred by the MIPA. After the closing, Basdekis worked closely with MoneyLion's accounting and finance personnel, meeting monthly to review Malka's financials prepared in accordance with GAAP.

(Countercl. ¶ 84.)  Thus, by virtue of the acquisition, Malka now maintained two sets of books: (1) one prepared in accordance with GAAP, to assist MoneyLion in preparing its consolidated financial statements; and (2) one consistent with Malka's historical, non-GAAP-conforming Accounting Principles and revenue and expenses maintained in accordance with Schedule B, to assist MoneyLion in preparing the 2021 Revenue and EBITDA Statement.  (*Id.* ¶¶ 84, 87.)

Once Basdekis presented the figures for MoneyLion's determination of whether Sellers were eligible for a 2021 Earnout Payment—and MoneyLion knew that these had been prepared in accordance with Schedule B, not GAAP or ASC 606 (Ex. 1 § 2.06(b)(i))—it was up to MoneyLion to compare those figures with Malka's GAAP-based set of books, if needed.  After undertaking whatever analysis or investigation it felt necessary, MoneyLion published the 2021 Revenue and EBITDA Statement and advised Sellers that Malka had satisfied the necessary revenue and EBITDA thresholds, so that Sellers were eligible for the maximum 2021 Earnout Payment of shares valued at $10 million.  Sellers obviously did not object and, as a result, pursuant to Section 2.06(b)(iii), the numbers became "**<u>final</u>**."  MoneyLion is bound by that finality.

Just as with its untimely attempt to expand the scope of indemnification after May 15, MoneyLion is asking this Court to exempt it from the force and effect of its own binding agreements.  Having failed to challenge Malka's accounting during the contractual periods, MoneyLion cannot now claim that the 2021 Earnout Transaction was based on fraudulent numbers—when it had every resource needed to check under the metaphorical hood of Malka's accounting.  Delaware courts hold that a party that fails to comply with contractual price-adjustment mechanisms and deadlines forfeits its right to challenge the price later.  *See Schillinger Genetics, Inc. v. Benson Hill Seeds, Inc.*, C.A. No. 2020-0260-MTZ, 2021 WL 320723, at *17 (Del. Ch. Feb. 1, 2021) (defendant waived its right to post-closing adjustment).

If MoneyLion had any doubts that Malka had met the required revenue and EBITDA thresholds, it could have raised them and pursued the negotiation and dispute-resolution process outlined in Section 2.06(b).  MoneyLion was aware that if it did not do so, it would be bound by its own calculations.  This claim is thus barred by contract and should be dismissed.

## IV.  <u>Count V Does Not State a Claim for Negligent Misrepresentation</u>

Count V invokes precisely the same alleged misrepresentations as Counts III and IV, and fails for similar reasons.  "[T]he elements of negligent misrepresentation are: (1) carelessness in imparting words; (2) upon which others were expected to rely; (3) and upon which they did act or failed to act; (4) to their damage," and (5) that the declarant "express[ed] the words directly, with knowledge or notice that they [would] be acted upon, to one to whom the declarant [was] bound by some relation or duty of care."  *Landesbank*, 478 F. App'x at 682 (citation omitted).

This claim "<u>requires a closer degree of trust between the parties than that of the ordinary buyer and seller</u> in order to find reliance on such statements justified."  *Landesbank*, 478 F. App'x at 682 (emphasis added) (citation omitted).  On this basis, in *Landesbank*, the Second Circuit affirmed dismissal of such a claim as between sophisticated counterparties to an arm's-length transaction.  *See also Landesbank*, 821 F. Supp. 2d at 624 ("New York courts generally do not permit negligent misrepresentation claims based on arm's-length transactions between sophisticated counterparties.").  This plainly disposes of Count V as to the Closing Transaction.

As for the 2021 Earnout Transaction, Sellers were MoneyLion employees at the time.  Yet "courts have routinely held that the employer-employee relationship does not constitute a special relationship sufficient to support a claim for negligent misrepresentation."  *Kwon v. Yun*, 606 F. Supp. 2d 344, 356 (S.D.N.Y. 2009) (citations omitted).  In *Capax Discovery, Inc. v. AEP RSD Invs., LLC*, No. 1:17-cv-00500-CCR, 2020 WL 5815943 (W.D.N.Y. Sept. 30, 2020), the plaintiff had acquired the defendant company in an arm's-length transaction and refused to pay the agreed-

upon earnout, alleging fraudulent inducement and negligent misrepresentation.  The court granted summary judgment to defendants, holding that their access to the target's financial information did not constitute "special expertise."  *Id.* at *9-10.

By the MIPA's express terms, Sellers and MoneyLion lacked the necessary special relationship with respect to both transactions.  The binding procedures outlined in Section 2.06(b) conclusively establish that the 2021 Earnout Transaction arose out of an arm's-length transaction between sophisticated counterparties represented by separate counsel; and, as with fraud claims, "[a]s a matter of law, a sophisticated plaintiff cannot establish that it entered into an arm's length transaction in justifiable reliance on alleged misrepresentations if that plaintiff failed to make use of the means of verification that were available to it, such as reviewing the files of the other parties."  *UST Private Equity Invs. Fund v. Salomon Smith Barney*, 288 A.D.2d 87, 88, 733 N.Y.S.2d 385 (1st Dep't 2001) (citations omitted) (affirming dismissal of fraud and negligent-misrepresentation claims).  Therefore, the MIPA bars Count V.

## V.    <u>Count VI Is Subject to Arbitration</u>

First, Sellers note that most of MoneyLion's allegations in Count VI refer to actions by "the Seller Members," but "a plaintiff may not rely on group pleading to assert a breach of fiduciary duty claim."  *Steinberg v. Sherman*, No. 07 Civ. 1001(WHP), 2008 WL 2156726, at *5 (S.D.N.Y. May 8, 2008) (citations omitted).  Thus, much of Count VI is subject to dismissal on its face.

Second, Section 5.1 of Frommer's and Krubich's respective Employment Agreements require arbitration before JAMS of any disputes relating to the agreements themselves or Sellers' employment or termination, including but not limited to claims for compensation, breach of contract or covenants, and employment-related torts.  The Employment Agreements state that Frommer and Krubich owed fiduciary duties by virtue of their <u>employment</u>, and MoneyLion does not identify any other source of Sellers' fiduciary obligations. (Exs. 10-11 § 1.2; Countercl. ¶ 209.)

In Count VI, MoneyLion alleges that three Sellers breached these duties by: (i) misappropriating company assets; (ii) manipulating revenue and EBITDA calculations on which MoneyLion allegedly, impermissibly relied; (iii) directing other employees to misstate Malka's finances; and (iv) forming a voting group without the proper disclosures.  These allegations all concern Sellers' employment; as such, they are arbitrable.  *See Chen-Oster v. Goldman, Sachs & Co.*, 449 F. Supp. 3d 216, 243 (S.D.N.Y. 2020) (compelling arbitration, where agreements mandated arbitration of virtually all employment-related disputes, and collecting cases).

Frommer and Krubich have not waived their right to arbitrate because their claims (ECF No. 9) arise out of the MIPA, the Restricted Stock Agreement, and the Registration Rights Agreement; and all relate to Sellers' rights as <u>sellers</u> of Malka and <u>shareholders</u> of MoneyLion— not as former employees.  If MoneyLion has any viable fiduciary-breach claims, they must be brought (if at all) before JAMS.  This count should be dismissed or stayed pending arbitration.

## VI.   <u>Count VII Does Not State a Claim for Conversion</u>

This bare and conclusory claim fails for numerous reasons.  First, MoneyLion "do[es] little more than plead the elements of the cause of action with respect to [its] conversion claim, which does not suffice."  *Zamora v. FIT Int'l Grp. Corp.*, 834 F. App'x 622, 629 (2d Cir. 2020).  MoneyLion does not even try to explain how Sellers allegedly "wrongfully exerted dominion" over shares paid to them pursuant to binding and enforceable agreements; or the nature of MoneyLion's alleged "property interest in" or "right to possess" such shares; or MoneyLion's alleged "significant damages" resulting from Sellers' lawful receipts of the agreed-upon payments.  MoneyLion has failed to meet the minimum pleading threshold.

Second, nothing in MoneyLion's 57 pages of Counterclaims resembles a claim for conversion.  On the contrary, Count VII—which relies on the same deficient allegations as Counts III through V—"rests on an allegation of fraudulent taking."  *Zamora*, 834 F. App'x at 629.  As

such, it is "subject to the pleading requirements of Rule 9(b)," *id.*, which MoneyLion cannot satisfy with its naked, unexplained recitation of the black-letter legal elements of conversion.

Third, because this claim simply duplicates MoneyLion's misrepresentation-based claims, it is also subject to dismissal on that basis. *See Gould Paper Corp. v. Madisen Corp.*, 614 F. Supp. 2d 485, 493 (S.D.N.Y. 2009).

**VII.  Most of MoneyLion's Claims in Count VIII Are Barred by Contract or as a Matter of Law, and Any That Survive Would Be Subject to Arbitration.**

Count VIII contains a hodgepodge of contract claims, all of which ostensibly arise out of the MIPA.  Each set of claims has its own distinct pleading deficiencies and is addressed in turn. MoneyLion's allegations related to GAAP and ASC 606 (Countercl. ¶¶ 220-223) merely reformat Counts III through V as breaches of Section 3.06 of the MIPA.  These claims are time-barred because MoneyLion did not assert them on or before May 15.  *See LPPAS Representative*, 2020 WL 7706937, at *8.  Further, at least some of the alleged misstatements were made pre-closing (*see*, *e.g.*, Countercl. ¶ 31) or are barred by Section 4.08 (non-reliance).

Beyond the rehashed GAAP and ASC 606 allegations, two fatal defects apply to the remainder of Count VIII.  First, <u>all of the claims would be subject to arbitration</u>, because these are all "claims for breach of any contract or covenant" relating to Sellers' former employment.  (Exs. 10-11 § 5.1.)  Thus, Count VIII should be dismissed in its entirety, or the non-duplicative claims stayed pending arbitration.  Second, MoneyLion engages in impermissible group pleading, failing to specify against whom each allegation is made and making no relevant allegations against Capra.

MoneyLion alleges that Sellers: (i) breached Section 3.04 of the MIPA by failing to disclose their ownership of a <u>non-operational</u> entity (Countercl. ¶¶ 138, 224); (ii) breached Section 3.12 through continued ownership of an entity (*id.* ¶¶ 139, 225), which <u>was in fact disclosed</u> in the Disclosure Schedules (*see* Ex. 2 § 3.23); and (iii) breached Sections 3.14 by failing to disclose an

account receivable (Countercl. ¶¶ 110-113, 226), which was in fact disclosed in the Disclosure Schedules (see Ex. 2 §§ 3.08, 3.23); and (iv) breached Section 3.17 by failing to disclose a related dispute (Countercl. ¶¶ 110-113, 227), which did not arise until long after the MIPA was executed (see Ex. 6 at 3). To the extent these claims are timely, they must be arbitrated.

MoneyLion's allegation that Sellers improperly disclosed confidential information in their Schedule 13D filing in breach of Section 5.01 of the MIPA (Countercl. ¶¶ 140-141, 228) is inadequately pleaded. MoneyLion admits that Sellers filed this form upon a request by MoneyLion itself, which prompted Sellers to disclose basic facts about the MIPA and the current dispute. MoneyLion has not made out a plausible claim under *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), because it does not adequately allege that the MIPA was confidential (it was not) or that the other disclosures were not required by law. (*See* Ex. 1 § 5.01.) MoneyLion never explains the purported basis for confidentiality and, as such, this allegation fails as a matter of law.

MoneyLion's claim regarding Sellers' alleged use of company funds for personal expenses in breach of Section 9.01 (Countercl. ¶¶ 90-96, 229) was also the subject of MoneyLion's notices of termination to Sellers, and so is arbitrable on an additional basis: as a dispute relating to termination.

In sum, beyond the duplicative and time-barred GAAP and ASC 606 allegations, Count VIII is subject to arbitration, is riddled with impermissible group pleading, and most of the allegations therein are barred as a matter of law or contract.

## VIII.   Count IX Is Subject to Arbitration

MoneyLion attempts to avoid mandatory arbitration of this claim by citing the MIPA and omitting mention of non-compete and non-solicitation provisions in the Employment Agreements. (Exs. 10-11 §§ 4.3, 4.4.) Irrespective of its artful pleading, when MoneyLion first raised these allegations with Sellers, it cited "their on-going restrictive covenant obligations under" both the

MIPA "and their former employment agreements." (Ex. 13 at 2.) These claims are clearly arbitrable as they "aris[e] out of or relat[e] to" Sellers' "employment or its termination," whether or not MoneyLion cites the employment agreements now. (Exs. 10-11 § 5.1.) Among the arbitrable issues is whether the restrictive covenants became void upon MoneyLion's breach of the MIPA, which continues to deprive Sellers of tens of millions of dollars in bargained-for consideration. MoneyLion also does not adequately allege damages for this claim.

## IX.    Count XI [*sic*] Does Not State a Claim for Unjust Enrichment

Finally, Count XI must be dismissed because MoneyLion's allegations relate to the Closing Transaction and 2021 Earnout Transaction—payments made pursuant to the MIPA. *See In re Columbia Tuition Refund Action*, 523 F. Supp. 3d 414, 430 (S.D.N.Y. 2021) (unjust enrichment claims are not available where parties' relationship is governed by contract); *Granite Partners, L.P. v. Bear, Stearns &Co.*, 17 F. Supp. 2d 275, 312 (S.D.N.Y. 1998) ("[P]ayments made pursuant to the express terms of a contract cannot be recovered via unjust enrichment theory.").

## X.    MLI Does Not State Any Claim at All

Although MLI purports to assert a third-party complaint, its pleading sets forth no claim specific to MLI, and MLI cannot assert claims on MoneyLion's behalf. MLI is not a party to the MIPA, and does not allege any facts connecting it with the relevant events or setting forth an alleged injury to MLI. As such, the third-party complaint should be dismissed in its entirety.

## CONCLUSION

For the foregoing reasons, Sellers respectfully move to: (i) dismiss Counts I, II, III, IV, V, VII, and XI of MoneyLion's Counterclaims in their entirety; (ii) dismiss Count VIII with respect to the allegations in paragraphs 220-223 and 228, and dismiss or stay Count VIII pending arbitration with respect to the allegations in paragraphs 224-227 and 229; (iii) dismiss or stay

Counts VI and IX pending arbitration; and (iv) dismissing MLI's Third-Party Complaint in its entirety.

Dated: New York, New York
         September 21, 2023

                                    Respectfully submitted,

                                    **KATTEN MUCHIN ROSENMAN LLP**

                                    By: */s/ Eliot Lauer*
                                            Eliot Lauer
                                            Geoffrey G. Young
                                            Nathaniel Ament-Stone
                                    50 Rockefeller Plaza
                                    New York, New York 10020
                                    T: (212) 940-8800
                                    F: (212) 940-8776
                                    eliot.lauer@katten.com
                                    geoffrey.young@katten.com
                                    nathaniel.ament-stone@katten.com

                                    *Counsel for Plaintiffs–Counterclaim/Third-Party Defendants Jeffrey Frommer, Lyusen (Louis) Krubich, Daniel Fried and Pat Capra*