UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                     :

JEFFREY FROMMER et al.,                :

                                :

            Plaintiffs,         :

                                :              23-CV-6339 (JMF)

      -v-                   :

                                :        MEMORANDUM OPINION

MONEYLION TECHNOLOGIES INC. et al.,    :            AND ORDER

                                :

            Defendants.      :

                                :
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

      In November 2021, Plaintiffs Jeffrey Frommer, Lyusen (Louis) Krubich, Daniel Fried, and Pat Capra entered into a Membership Interest Purchase Agreement ("MIPA") with Defendants MoneyLion Technologies Inc. and MoneyLion Inc. ("MoneyLion"), pursuant to which Plaintiffs sold their interest in Malka Media Group LLC ("Malka") in exchange for cash and MoneyLion common stock. ECF No. 9 ("Am. Compl."), ¶¶ 1-2. On June 6, 2023, however, MoneyLion issued a "stop order" with respect to the stock, thereby restricting Plaintiffs' access to it. ECF No. 38 ("Defs.' Opp'n"), at 10. This lawsuit followed, with Plaintiffs bringing breach of contract claims against MoneyLion and seeking an order requiring MoneyLion to lift the restrictive legends on its stock. Am. Compl. ¶¶ 1-11. MoneyLion counters that the restrictive legends are proper because Plaintiffs made "misrepresentations regarding Malka's financial statements and practices" and that such misrepresentations "may have impacted [Plaintiffs'] putative rights" to the stock. Defs.' Opp'n 10. Now pending is Plaintiffs' motion for a preliminary injunction compelling MoneyLion to remove the restrictive legends from the common stock — the principal relief that it seeks in the lawsuit generally. *See* ECF No. 16.

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *see also Hanson Tr. PLC v. SCM Corp.*, 774 F.2d 47, 60 (2d Cir. 1985) (describing a preliminary injunction as "one of the most drastic tools in the arsenal of judicial remedies"). A party seeking a preliminary injunction "must ordinarily establish (1) irreparable harm; (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party; and (3) that a preliminary injunction is in the public interest." *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015) (quoting *Oneida Nation of New York v. Cuomo*, 645 F.3d 154, 164 (2d Cir. 2011)) (internal quotation marks omitted). Significantly, "[a] showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (quoting *Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999)) (internal quotation marks omitted). Thus, if a party fails to show irreparable harm, a court need not even address the remaining elements. *See, e.g.*, *Monowise Ltd. Corp. v. OZY Media, Inc.*, 17-CV-8028 (JMF), 2018 WL 2089342, at *1 (S.D.N.Y. May 3, 2018).

In this case, Plaintiffs fail to establish this "single most important prerequisite" for preliminary injunctive relief. Courts in this Circuit have long held that "[w]here a plaintiff claims that a defendant breached a contract by failing to deliver . . . publicly traded stock, money damages can adequately compensate the plaintiff for his loss." *Iroquois Master Fund, Ltd. v. Quantum Fuel System Technologies Worldwide, Inc.*, No. 13-CV-3860 (CM) (SN), 2014 WL 12776748, at *16 (S.D.N.Y. May 23, 2014); *accord EMA Fin., LLC v. AIM Expl., Inc.*, No. 18-CV-145 (ER), 2019 WL 689237, at *13 (S.D.N.Y. Feb. 19, 2019); *see also, e.g.*, *Lucente v. Int'l*

*Bus. Machines Corp.*, 310 F.3d 243, 262 (2d Cir. 2002) (denying a request to award publicly traded stock to a prevailing plaintiff because there was "no reason why money damages would not adequately compensate [the plaintiff] for [the defendant's] breach"); *Alpha Cap. Anstalt v. Shiftpixy, Inc.*, 432 F. Supp. 3d 326, 339 (S.D.N.Y. 2020) ("'Where the breach involves the deprivation of an item,' such as stock, 'with a determinable market value, the market value at the time of the breach is the measure of damages.'" (quoting *Sharma v. Skaarup Ship Management Corp.*, 916 F.2d 820, 825 (2d Cir. 1990))). That is the precisely the situation here.

Although they are not invoked by Plaintiffs, there are two exceptions to the rule that injunctive relief is not appropriate to remedy the non-delivery of a convertible stock: first, when the defendant is insolvent or on the brink of insolvency, *see, e.g.*, *CRP/Extell Parcel I, L.P. v. Cuomo*, 394 F. App'x 779, 781 (2d Cir. 2010) (summary order); and second, when, absent injunctive relief, the plaintiff would be deprived of some unique benefit or item that cannot be compensated by damages, *see, e.g.*, *Oracle Real Estate Holdings I LLC v. Adrian Holdings Company I LLC*, 582 F. Supp. 2d 616, 625 (S.D.N.Y. 2008). But neither exception applies here. As to the first, there is no evidence that MoneyLion is insolvent or on the brink of insolvency. Plaintiffs do assert that MoneyLion's stock is in a "free fall," ECF No. 18 ("Frommer Decl."), ¶¶ 41-42 — an assertion MoneyLion disputes, *see* Defs.' Opp'n 11 — but even if true, that would not establish MoneyLion's insolvency or the inability to satisfy a judgment. As to the second, Plaintiffs fail to establish that they have been deprived of a unique benefit by showing, for example, that the MoneyLion "shares are unavailable on the open market." *EMA Fin.*, 2019 WL 689237, at *13 & n.16; *see, e.g.*, *Alpha Cap. Anstalt*, 432 F. Supp. 3d at 341. Plaintiffs do argue that the restrictive legends "have the potential to strain [their] finances, which includes satisfying their tax obligations," Pls.' Mem. 11, but they fail to cite any authority for the

3

proposition that such harm — in essence, an urgent need for monetary relief — constitutes irreparable harm.  Moreover, as Plaintiffs themselves concede, MoneyLion actually did "permit the sale of a sufficient number of shares to cover [their] tax obligations."  *Id.* at 8.

Tellingly, the one and only case that Plaintiffs cite in support of their irreparable-harm arguments — *Diversified Earth Scis.*, *Inc. v. Hallisey*, No. 73-CV-816, 1973 WL 401 (S.D.N.Y. June 12, 1973) — is half a century old.  *See* Pls.' Mem. 10-12; ECF No. 46 ("Pls.' Reply"), at 6. The fact that it is ancient and against the weight of authority discussed above is reason enough not to follow it.  But on top of that, the decision is unpersuasive on its own terms and distinguishable.  The court conceded that "[t]he question of irreparable harm . . . present[ed] . . . difficulty" because "the harm [the moving parties] might suffer might possibly be determinable in money damages at a later date." *Diversified Earth Scis.*, 1973 WL 401, at *4.  But "see[ing] no prejudice to the [non-moving party] in granting the injunction," the court waved away that "difficulty."  *Id.*  In doing so, however, it conflated two distinct factors in the preliminary-injunction analysis — irreparable harm and the balance of hardships — and, thus, disregarded the "single most important" one.  *Faiveley Transp. Malmo AB*, 559 F.3d at 118.  In any event, the case is also distinguishable because here, unlike the non-moving party in *Diversified Earth Sciences*, MoneyLion does assert a "colorable legal basis" for restricting the stock at issue.  1973 WL 401, at *4; *see, e.g.*, Defs.' Opp'n 19-20 (alleging that Plaintiffs' breach of the MIPA and fraudulent conduct call into question their entitlement to the shares); *see also* ECF No. 43 ("Defs.' Counterclaims"), at 54-70.

Perhaps recognizing the lack of authority for their position, Plaintiffs offer a new argument in their reply: that they are entitled to a preliminary injunction because the MIPA provides "that irreparable damage would occur if any provision of this Agreement were not

performed in accordance with the terms hereof and that the Parties shall be entitled to specific performance of the terms hereof . . . ."  Pls.' Reply 5; *see* ECF No. 18-1, § 9.12.  "It is well established," however, "that a party may not raise new arguments in a reply."  *United States v. Fernandez*, No. 17-CR-167 (JMF), 2017 WL 6372783, at *1 n.2 (S.D.N.Y. Dec. 12, 2017).  In any event, "[l]ike other courts in this District, '[t]his Court is aware of no authority indicating that such a contract provision entitles [a party moving for a preliminary injunction] to a per se finding of irreparable harm.'"  *EMA Fin.*, 2019 WL 689237, at *12 (quoting *Int'l Creative Mgmt., Inc. v. Abate*, No. 07-CV-1979 (PKL), 2007 WL 950092, at *6 (S.D.N.Y. Mar. 28, 2007)); *see, e.g.*, *Baker's Aid, a Div. of M. Raubvogel Co. v. Hussmann Foodservice Co.*, 830 F.2d 13, 16 (2d Cir. 1987) ("[C]ontractual language declaring money damages inadequate in the event of a breach does not control the question whether preliminary injunctive relief is appropriate.").  Accordingly, Plaintiffs' newfound argument in reply does not fly either.

In short, Plaintiffs fail to establish "the single most important prerequisite for the issuance of a preliminary injunction": irreparable harm.  *Faiveley Transp. Malmo AB*, 559 F.3d at 118.  It follows that their motion for a preliminary injunction must be and is DENIED.

The Clerk of Court is directed to terminate ECF No. 16.

SO ORDERED.

Dated: October 17, 2023
      New York, New York

JESSE M. FURMAN
United States District Judge

5