

**David M. Levy**
*E-Mail: dlevy@kkwc.com*
*Direct Dial: 212.880.9894*

February 27, 2024

> The Court is persuaded that MoneyLion is proceeding diligently and that there is no basis for Court intervention at this time. Counsel are encouraged to work in good faith together to sort through the issues, to identify categories of documents that should be prioritized, and to make productions on a rolling basis. The Court hopes and assumes that the relevant productions will be made in the next couple weeks. If that proves not to be the case, Plaintiffs are free to renew their request for Court intervention. The Clerk of Court is directed to terminate ECF No. 75. SO ORDERED.
>
> February 28, 2024

**VIA ECF**

Hon. Jesse M. Furman
United States District Court
Southern District of New York
40 Centre Street, Room 2202
New York, NY 10007

Re:     *Frommer, et al. v. MoneyLion Techs. Inc. et al.*, No. 23-cv-06339 (JMF)

Dear Judge Furman:

We represent Defendant and Counterclaim-Plaintiff MoneyLion Technologies Inc. and Third-Party Plaintiff MoneyLion Inc. (together, "MoneyLion") in the above-referenced matter. Pursuant to Rule 3.E of Your Honor's Individual Rules and Practices in Civil Cases, we write in opposition to Plaintiffs' February 22, 2024 letter-motion (ECF No. 75).

Plaintiffs' motion to compel discovery from MoneyLion is both meritless and premature. Plaintiffs make no effort to identify any failure to comply with the discovery deadlines set forth in the operative Civil Case Management Plan and Scheduling Order (ECF No. 60), or any obligation imposed by the Federal Rules of Civil Procedure—because they cannot. Rather, the gist of Plaintiffs' motion is that MoneyLion should produce more documents on a faster timetable. In recent weeks, Plaintiffs sought to unilaterally modify the Scheduling Order by demanding that MoneyLion substantially complete its document production *three months ahead of the fact discovery cutoff*. When MoneyLion did not accede to this improper demand, and without regard to the significant challenges posed by MoneyLion's collection, review and production of a massive volume of documents, Plaintiffs asked this Court to impose a set of accelerated and unrealistic interim deadlines. Plaintiffs' position is untenable and their motion should be denied in its entirety.

As set forth in Plaintiffs' motion, the parties submitted responses to written discovery requests on January 2, 2024. The Scheduling Order requires that "[a]ll fact discovery shall be completed no later than May 31, 2024" and sets forth no interim document discovery deadlines. Nevertheless, on January 9, Plaintiffs indicated that they intended to produce documents early the next week and requested that "we fix a date for an exchange of documents." MoneyLion responded promptly that "[w]e are in the process of addressing the logistics for our document review and will revert when we are in a better position to set timeframes for production." Several days later, Plaintiffs delivered a small production claiming that it "contains substantially all of [Plaintiffs] anticipated production of written documents." By January 28—less than a month after responses and objections to document requests were served—Plaintiffs' counsel boldly demanded that MoneyLion "make a significant production as soon as possible," insisting that "the parties should aim for substantial completion of our productions by mid-February."



Hon. Jesse M. Furman
February 27, 2024

As set forth in Plaintiffs' motion, counsel for the parties met and conferred on February 2, 2024 to discuss various issues related to the parties' document productions. MoneyLion explained that while Plaintiffs claimed to have substantially completed their document production after producing *only 357 documents* (a dubious claim as to which MoneyLion reserves all rights and is continuing to meet and confer with Plaintiffs), MoneyLion faces a substantially more significant challenge. Virtually the entire burden of document discovery falls on MoneyLion, due in large part to its having acquired the legacy email and Slack archives for Malka Media Group LLC ("Malka") in connection with the acquisition of Malka. In other words, MoneyLion has within its possession nearly all of the electronically stored information subject to disclosure obligations *by both sides in this action*. Given these unique circumstances, we informed Plaintiffs' counsel that MoneyLion intended to produce back to Plaintiffs their Malka email inboxes and Slack archives without regard to search terms or time period, giving all parties equal access to Plaintiffs' electronic communications. The only documents MoneyLion plans to exclude from this production are communications from after the Malka acquisition that involve MoneyLion's internal and/or external legal counsel, which MoneyLion plans to review for privilege.[1]

During the February 2 meet-and-confer, Plaintiffs' counsel asked for the first time if MoneyLion could prioritize production of due diligence-related materials, including the quality-of-earnings report prepared by MoneyLion's external accounting advisory firm, CFGI. In response to this request, though not obligated to do so, MoneyLion produced over 2,000 pages of material, including the requested due diligence report, on February 9, 2024—still months ahead of the fact discovery cutoff. Plaintiffs now cast this production in a negative light by insinuating—erroneously—that MoneyLion purposely avoided producing this report until shortly before it would have been produced by CFGI. Plaintiffs' disingenuous allegation is inappropriate and inconsistent with the parties' discussions ahead of that production, which was made in good faith in an effort to accomplish the accelerated timeline that Plaintiffs expressly requested.

Despite MoneyLion's good faith effort to produce Plaintiffs' electronic communications within a matter of weeks, the actual collection of those documents has taken substantially longer than anticipated. To collect documents, MoneyLion's global technology specialists in both the U.S. and Malaysia, including MoneyLion's Chief Information Security Officer, needed to identify the relevant set of electronic communications across internal data repositories. Once this universe was identified and the timeline and structure of the data exports were established, the actual collection process required considerable time and attention from MoneyLion's IT personnel, who simultaneously needed to fulfill their substantial obligations in maintaining the technology infrastructure and systems of a public company and its subsidiaries.

---

[1] Notably, Plaintiffs had not once requested access to their communications, seemingly content with saddling MoneyLion with the onerous obligation to produce those communications on Plaintiffs' behalf. What Plaintiffs now refer to as an "indiscriminate data-dump of mostly irrelevant documents" is the only manner in which MoneyLion could provide Plaintiffs access to their own documents without substantially delaying completion of discovery.



Hon. Jesse M. Furman
February 27, 2024

      Even under the most optimal conditions the collection process would have been extremely time-consuming. But here the burdens were amplified by the volume of data MoneyLion was required to collect, encompassing both its own custodians and *Plaintiffs'* communications, which totaled over *four terabytes* of data. Once collected, that data needed to be transferred to MoneyLion's external e-discovery vendor for processing, which itself has required significant time and has been further complicated by technical challenges encountered by MoneyLion's IT specialists and the vendor due to the sheer volume of data. The vendor now is in receipt of the full volume of data, which currently is being deduplicated and processed into a database for review and production. As evidenced by Exhibit C to Plaintiffs' motion (ECF No. 75-3), on February 21, 2024, MoneyLion informed Plaintiffs' counsel of the logistical hurdles it had encountered and its intent to produce Plaintiffs' communications in stages while additional collection and processing was completed. Unfortunately, this update fell on deaf ears. Plaintiffs instead chose to burden the Court with the instant motion, alleging without any basis in fact that MoneyLion has been delaying its production in bad faith.

      MoneyLion objects to Plaintiffs' novel request that the Court micromanage the discovery process by requiring production of documents for specific time periods and on specific topics in a specific order, based on a unilateral proffer of relevance dictated by Plaintiffs. Respectfully, MoneyLion must be permitted to conduct a careful and thorough review of the documents it has collected to determine responsiveness and assess any claims of privilege. Plaintiffs' proposed schedule, which contemplates mandatory rolling productions beginning at the end of this week, wreaks havoc on the process outlined in the Scheduling Order, and would deprive MoneyLion's counsel of a meaningful opportunity to review the documents prior to production.[2]

      In sum, Plaintiffs have opted to move this Court for relief that is unprecedented and wholly inconsistent with the deadlines currently in effect, or with MoneyLion's obligations under the Federal Rules of Civil Procedure or the Local Civil Rules. As MoneyLion has not failed to comply with its discovery obligations or the Scheduling Order in any respect, there is no legitimate basis for filing a motion pursuant to F.R.C.P. 37, and Plaintiffs' motion should be denied in all respects.

                                                    Respectfully submitted,

                                                    David M. Levy

DML:jlf

---

[2] In response to Plaintiffs' last email (ECF No. 75-3), MoneyLion expected to discuss with Plaintiffs an appropriate extension of the agreed deadlines (subject to the Court's approval) that would recognize the practical challenges MoneyLion faces. Rather than continuing the meet and confer process, Plaintiffs instead proceeded with this motion.