

**50 Rockefeller Plaza**
**New York, NY 10020-1605**
**+1.212.940.8800 tel**
**katten.com**

ELIOT LAUER

eliot.lauer@katten.com
+1.212.940.6690 direct
+1.212.940.8776 fax

January 10, 2025

<u>**VIA ECF**</u>

Hon. Jesse M. Furman
United States District Court for the Southern District of New York
40 Foley Square
New York, New York 10007

**Re:**     ***Frommer et al. v. MoneyLion Techs. Inc. et al.**, No. 1:23-cv-06339-JMF*

Dear Judge Furman:

        We write on behalf of Plaintiffs in accordance with the Court's Memo Endorsed Order dated January 8, 2025 (ECF No. 166) and in response to MoneyLion's letter-motion dated January 7, 2025 (ECF No. 155), regarding the sealing of MoneyLion's Response to Plaintiffs' Proposed Findings of Fact and Conclusions of Law (ECF Nos. 160 (sealed version) and 161 (redacted version) (the "Response")).

        Plaintiffs request that nine lines of text on page 39 of MoneyLion's 132-page Response remain inaccessible to the public. The redacted text includes quotes from certain of Plaintiffs' private text messages, many of which are ***more than a decade old*** (when they were in their twenties) and predate the transaction at issue by ***seven years***. They have no relevance to issues in the case. MoneyLion includes them for the transparent, improper purposes of intimidating and embarrassing Plaintiffs, three of whom have young children.

        MoneyLion's disingenuous basis for including this material is Mr. Frommer's credibility as a witness, given that MoneyLion accuses him of having made certain oral misrepresentations regarding Malka's accounting practices. ECF No. 160 at 38-39. That is complete nonsense and MoneyLion knows it. While the words exchanged in these text messages are regrettable and indecent, they have nothing to do with witness credibility in the context of this M&A dispute. MoneyLion's parenthetical characterizations of the messages (many of which were not even written by Mr. Frommer) deprives them of the obvious, unserious contexts in which they were written. There is no legitimate public interest advanced through their publication. This Court is not the proper forum for MoneyLion to air its personal vendetta against Plaintiffs.

        <u>**Background**</u>. These texts were not produced by Plaintiffs, and several of them predate the parties' agreed-upon discovery period by many years. MoneyLion only obtained them when Plaintiff Frommer returned his MoneyLion-issued laptop in June 2024. The laptop was, at a point in time before he returned it, linked to his Apple ID account, which swept his old iMessages into the computer's hard drive. Unbeknownst to Mr. Frommer, MoneyLion had the ability to

KATTEN MUCHIN ROSENMAN LLP

CENTURY CITY     CHARLOTTE     CHICAGO     DALLAS     LOS ANGELES
NEW YORK     ORANGE COUNTY     SHANGHAI     WASHINGTON, DC
A limited liability partnership including professional corporations
LONDON: KATTEN MUCHIN ROSENMAN UK LLP

forensically recover messages going back at least to 2014, notwithstanding that Mr. Frommer had de-linked his Apple ID before returning it. Plaintiffs, anticipating that the laptop could contain personal and/or privileged information, designated the contents of the laptop "Attorneys' Eyes Only" under the Protective Order, electing not to waste time and resources on a discovery dispute, when the non-discoverable material could be sufficiently guarded by the Protective Order.

MoneyLion then, in pre-trial exchanges, listed the exhibits on its proposed exhibit list, and Plaintiffs interposed objections on grounds of relevance (FRE 401), unfair prejudice and wasting time (FRE 403), and impermissible character or propensity evidence (FRE 404).

MoneyLion apparently did not feel compelled to use this "evidence" in its Proposed Findings of Fact and Conclusions of Law. It offered it in its Response, for the first time, for reasons it does not state—but which are clearly borne of desperation.

**Applicable Law**. The Supreme Court has recognized that "[e]very court has supervisory power over its own records and files, and [public] access has been denied where court files might have become a vehicle for improper purposes." *Nixon v. Warner Commc'ns, Inc.,* 435 U.S. 589, 598 (1978). Indeed, the public's right to access court records should "bow[] before the power of a court to insure that its records are not ***used to gratify private spite*** or ***promote public scandal*** through the publication of the painful and sometimes disgusting details" of a litigant's private life. *Id*. (emph. added, citation and quotes omitted). This is particularly the case where, as here, the material in dispute bears no relation to the merits of the dispute.

The Second Circuit, noting the principles in *Nixon*, has expressed its own "concern that court files might be used to promote scandal arising out of unproven potentially libelous statements." *Brown v. Maxwell*, 929 F.3d 41, 51–52 (2d Cir. 2019). Recognizing that a district court's "supervisory function" is "not only within a district court's power, but also among its responsibilities," the Court of Appeals instructs:

> [D]istrict courts may employ several methods to fulfill this function. They may, for instance, issue protective orders forbidding dissemination of certain material "to protect a party or person from annoyance, embarrassment, oppression, or undue burden" and require that filings containing such material be submitted under seal [citing Fed. R. Civ. P. 26(c)]. If parties then seek to file such materials, ***the court may deny them leave to do so***. District courts may also seek to counteract the effect of defamatory statements by explaining on the record that the statements appear to lack credibility. Moreover, under Federal Rule of Civil Procedure 12(f), the district court may strike such material from the filings on the grounds that it is "redundant, immaterial, impertinent, or scandalous." Because such rejected or stricken material is not "relevant to the performance of the judicial function" it would not be considered a "judicial document" and would enjoy no presumption of public access.

Katten

> Finally, in appropriate circumstances, district courts may impose sanctions on attorneys and parties under Federal Rule of Civil Procedure 11(c).

*Id.* (emph. added). With the exception of Rule 12(f)—which applies to "pleading[s]" and not memoranda like the Response—each of the methods set forth in *Brown* would be appropriate here.

*First*, the Court has inherent power to enforce its Protective Order by denying MoneyLion's attempt to characterize or quote from an "Attorneys' Eyes Only" document on the public docket. (ECF No. 74). Plaintiffs' confidentiality interest in their private text messages (including DX383, DX379, and DX466, as well as other text-message exhibits to which Plaintiffs have objected on similar grounds) is obvious in light of the possibility that these irrelevant texts are used "used to gratify" MoneyLion's "private spite." *Nixon,* 435 U.S. at 598.

*Second*, Rule 11(b) places an obligation on MoneyLion's counsel to certify that the Response was "not being presented for any improper purpose, such as to harass." MoneyLion's distinguished counsel knows well that these text messages, most of which are a decade old, have nothing to do witness credibility at the upcoming trial. Pursuant to Rule 11(c), the Court should direct MoneyLion, as a form of sanction, to refile the Response without the offending material from page 39. Plaintiffs leave to the Court's discretion whether any further sanction is merited.

*Third*, the Court should permanently seal the offending material under the standard of *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006) (citation omitted), which holds that judicial documents should be sealed where "closure is essential to preserve higher values and is narrowly tailored to serve that interest." Plaintiffs' request is narrowly tailored to nine lines of the 132-page Response. "[T]he privacy interests of" the referenced Plaintiffs "are strong"— they are private businessmen with no public persona—and there is no countervailing public interest to be served by MoneyLion's debased and plainly personal smear campaign. *See Zappin v. Schorr*, No. 22-CV-2034 (ER), 2023 WL 2601578, at *14 (S.D.N.Y. Mar. 22, 2023) (granting motion to seal). As the Second Circuit has held, "embarrassing conduct with no public ramifications" is an example of material that "will weigh more heavily against access than conduct affecting a substantial portion of the public." *United States v. Amodeo*, 71 F.3d 1044, 1051 (2d Cir. 1995) (reversing unsealing order).

Respectfully submitted,

*/s/ Eliot Lauer*

Eliot Lauer

cc:      All counsel of record