UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEFFREY FROMMER, LYUSEN (LOUIS) KRUBICH, DANIEL FRIED AND PAT CAPRA, <br><br>                              Plaintiffs, <br><br>- *against* – <br><br>MONEYLION TECHNOLOGIES INC. AND CONTINENTAL STOCK TRANSFER & TRUST COMPANY, <br><br>                              Defendants, <br><br>MONEYLION TECHNOLOGIES INC., <br><br>                    Counterclaim Plaintiff, <br>- *against* – <br><br>JEFFREY FROMMER, LYUSEN (LOUIS) KRUBICH, DANIEL FRIED and PAT CAPRA, <br>               Counterclaim Defendants, <br>MONEYLION INC., <br><br>                    Third-Party Plaintiff, <br>- *against* – <br><br>JEFFREY FROMMER, LYUSEN (LOUIS) KRUBICH, DANIEL FRIED and PAT CAPRA, <br><br>                    Third Party Defendants. | Case No. 1:23-cv-06339-JMF <br><br>**ORAL ARGUMENT REQUESTED** |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MONEYLION'S
<u>MOTIONS TO EXCLUDE THE TESTIMONY OF SELLERS' PROPOSED EXPERTS</u>**

# **TABLE OF CONTENTS**

Page(s)

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

ARGUMENT ........................................................................................................................... 2

I.    Sellers' Arguments that the Challenged Bingham and Larson Opinions Should Be Admitted Under a Lower Daubert Standard, and Because the Witnesses Will Testify About Other Opinions, Are Meritless. .................................................................................................... 2

II.   MoneyLion's Daubert Motion Concerning the Testimony of Bingham Should Be Granted. 3

    A.   Sellers' Opposition Confirms that Bingham's Valuation Methodology (Opinion 2) Is Unreliable. ............................................................................................................................. 3

    B.   Sellers' Opposition Confirms that Bingham's Speculation About Supposed "Synergies" (Opinion 3) Is Unreliable. ..................................................................................................... 6

    C.   Sellers' Opposition Confirms that Bingham's Testimony Concerning the "Digital Marketing Space" (Opinion 4) Is Unreliable and Unhelpful. ................................................ 6

III.  MoneyLion's Daubert Motion Concerning the Testimony of Larson Should Be Granted. 8

    A.   The Court Should Exclude Larson's Opinion that the MIPA Requires the Application of Unspecified "Historical Accounting Principles." ................................................................... 8

    B.   Larson's Application of Malka's Historical Accounting Principles Is Unreliable and Unhelpful. ........................................................................................................................... 10

        1.   401(k) Contributions, Severance, and Bonuses ........................................................... 11

        2.   Retained Teams ............................................................................................................ 11

        3.   Revenue Recognition ................................................................................................... 12

CONCLUSION ....................................................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alto* v. *Sun Pharmaceutical Indus., Inc.*,
  2021 WL 4803582 (S.D.N.Y. Oct. 13, 2021) ............................................................................ 7

*Am. Empire Surplus Lines Ins. Co.* v. *J.R. Contracting & Env't Consulting, Inc.*,
  2024 WL 3638329 (S.D.N.Y. Aug. 2, 2024) ............................................................................. 9

*Csikos* v. *S.M. Constr. & Contracting, Inc.*,
  2022 WL 3211462 (S.D.N.Y. Aug. 9, 2022) ........................................................................... 11

*Daniels-Feasel* v. *Forest Pharms., Inc.*,
  2021 WL 4037820 (S.D.N.Y. Sept. 3, 2021),
  *aff'd*, 2023 WL 4837521 (2d Cir. July 28, 2023) ..................................................................... 5

*General Elec. Co.* v. *Joiner*,
  522 U.S. 136 (1997) .................................................................................................................. 3

*Hamrit* v. *Citigroup Glob. Markets Inc.*,
  2024 WL 4891889 (S.D.N.Y. Nov. 26, 2024) .................................................................... 6, 11

*Jupiter* v. *United States*,
  2010 WL 11623400 (E.D.N.Y. Dec. 2, 2010) ...................................................................... 2, 6

*Nike, Inc.* v. *StockX LLC*,
  2024 WL 3361411 (S.D.N.Y. July 10, 2024) ........................................................................... 4

*Nimely* v. *City of New York*,
  414 F.3d 381 (2d. Cir. 2005) .................................................................................................... 5

*R.F.M.A.S., Inc.* v. *So*,
  748 F.Supp.2d 244 (S.D.N.Y. 2010) ........................................................................................ 4

*Royal & Sun Alliance Ins. PLC* v. *UPS Supply Chain Sols., Inc.*,
  2011 WL 3874878 (S.D.N.Y. Aug. 31, 2011) .......................................................................... 3

*State of New York* v. *United Parcel Serv., Inc.*,
  2016 WL 4735368 (S.D.N.Y. Sept. 10, 2016) ..................................................................... 10n

MoneyLion respectfully submits this memorandum of law in further support of its motions[1] to exclude Sellers' proffered expert testimony of Bruce B. Bingham (the "Bingham Motion," or "Bingham Mot.") and Jennifer L. Larson (the "Larson Motion," or "Larson Mot."; together with the Bingham Motion, the "Motions"), and in response to Sellers' opposition to the Motions (the "Opposition," or "Opp.").[2]

## PRELIMINARY STATEMENT

MoneyLion demonstrated in its Motions that Sellers' two experts have proffered opinions that lack the reliability necessary for expert testimony to be admissible. In response, Sellers mischaracterize the record while ignoring relevant legal standards, or simply ignore MoneyLion's arguments altogether.

Sellers ask the Court to apply a relaxed version of the *Daubert* standard because this case will be decided by a bench trial, effectively conceding that they cannot satisfy the actual *Daubert* standard. In any event, the Challenged Opinions[3] are so unreliable that they are inadmissible under any reading of *Daubert*. Sellers also argue, inexplicably, that because MoneyLion only challenged certain opinions of each expert, both of Sellers' experts should be permitted to testify on all topics. But Sellers cannot use the fact that MoneyLion was judicious in its challenges to admit improper testimony.

With respect to Bingham, Sellers devote a page of their Opposition to defending his First Opinion, which MoneyLion **has not sought to exclude**. And Sellers do not rebut MoneyLion's showing that Bingham's Second, Third, and Fourth Opinions—which MoneyLion has moved to

---

[1] On December 20, 2024, MoneyLion filed the Bingham Motion and Larson Motion separately based on Rule 4(H) of the Court's 2024 Individual Rules and Practices in Civil Cases, which was revised in 2025.

[2] Unless otherwise noted, all emphases are added, internal citations and quotations are omitted, and defined terms are the same as in the Motions.

[3] The Challenged Opinions consist of Bingham's Opinions 2-4 and Larson's Opinions 1, 4, and 5.

exclude—are premised on indefensible assumptions that lack any replicable methodology. Because these Opinions amount to nothing more than Bingham's personal musings, they are improper *ipse dixit* and should be excluded.

Sellers' Opposition also does nothing to rescue Larson's testimony, which advances impermissible legal conclusions about what Schedules A and B of the MIPA mean. If admitted, these opinions would usurp the Court's role as the sole arbiter of legal issues, and accordingly Larson's testimony should be excluded. In addition, Larson's opinions on the 2022 Earnout calculation are unreliable and unhelpful, and should be excluded on this basis as well. Sellers do not rebut MoneyLion's showing on these points either.

## ARGUMENT

I. **SELLERS' ARGUMENTS THAT THE CHALLENGED BINGHAM AND LARSON OPINIONS SHOULD BE ADMITTED UNDER A LOWER *DAUBERT* STANDARD, AND BECAUSE THE WITNESSES WILL TESTIFY ABOUT OTHER OPINIONS, ARE MERITLESS.**

Sellers rely heavily on some courts' application of a relaxed *Daubert* standard in bench trials. (*See, e.g.*, Opp. 4-5). It is obvious why Sellers must do this: they **need** a more forgiving standard because the Challenged Opinions fall short of the *Daubert* standard.

Regardless, the Challenged Opinions should be excluded under any reasonable reading of *Daubert*. Sellers concede that—even in a bench trial—evidence that is "wholly irrelevant" or "so speculative as to have no probative value" should be excluded. (Opp. 5). Here, Bingham acknowledged that his valuation methodologies are based on his unexplained "professional judgment" and even conceded that they involved "[n]o great deep thought." (*See, e.g.*, Bingham Mot. 10, 20). Similarly, Larson acknowledged that she is reading the "plain language" of the MIPA based on her "common sense." (*See, e.g.*, Larson Mot. 10). Such opinions are "so speculative as to have no probative value." *See Jupiter* v. *United States*, 2010 WL 11623400, at

\*3 (E.D.N.Y. Dec. 2, 2010) (holding that testimony that was "sufficiently speculative and conjectural" was inadmissible in a bench trial).

It is no more persuasive for Sellers to argue that because Bingham and Larson will be testifying on certain issues, they should be allowed to testify on *all* issues, including opinions that are unreliable. Sellers would place on MoneyLion (and the Court) the burden of sifting through which statements are admissible and which are not during cross-examination. (*See* Opp. 1-2, 19-21). For example, Sellers argue that because "[t]he Court will hear Bingham's critique" of Gompers, "the Court also should hear from Bingham as to his remaining three opinions." (Opp. 2). But courts routinely exclude portions of an expert's opinion, and Sellers have offered no good reason why the parties and the Court should be compelled to devote resources at trial to inadmissible opinions. *See, e.g.*, *Royal & Sun Alliance Ins. PLC* v. *UPS Supply Chain Solutions, Inc.*, 2011 WL 3874878, at \*6 (S.D.N.Y. Aug. 31, 2011) (rejecting in a bench trial "unreliable" opinion that was a "waste of time" to consider). Indeed, if Sellers' argument were accepted, any time any aspect of an expert's opinions were admitted, *all* of their opinions, including plainly inadmissible ones, could come along for the ride. That is not the law.

## II. MONEYLION'S *DAUBERT* MOTION CONCERNING THE TESTIMONY OF BINGHAM SHOULD BE GRANTED.

### A. Sellers' Opposition Confirms that Bingham's Valuation Methodology (Opinion 2) Is Unreliable.

As demonstrated in the Bingham Motion, Bingham's valuation methodologies are based on a series of assumptions that amount to nothing more than his say-so. (Bingham Mot. 10). That is insufficient under Rule 702. *General Elec. Co.* v. *Joiner*, 522 U.S. 136, 146 (1997).

Unable to defend Bingham's musings, Sellers attack a strawman argument: that the valuation approaches Bingham used to build his three models—a discounted cash flow model and

3

market-based valuation approaches—are reliable. (Opp. 9-11). But MoneyLion has not challenged these approaches. The problem with Bingham's opinions is not the underlying approaches he uses, but how he applies them to a valuation of Malka.[4] *See R.F.M.A.S., Inc.* v. *So*, 748 F.Supp.2d 244, 250 (S.D.N.Y. 2010) (excluding testimony as unreliable where expert's models "were reasonable in general," but not "reliable ways to draw a conclusion regarding the ***particular matter***"). And for that problem, Sellers have no solution. Sellers fail to explicitly defend most of Bingham's assumptions, effectively conceding that they lack any reliable basis. And in trying to defend the two assumptions they do choose to address, Sellers just confirm their lack of reliability.

First, Sellers claim that Bingham's randomly-assigned weighting of the three valuation methods he uses "reflect[s] a balanced approach as between projections and historical performance." (Opp. 11). But as MoneyLion has already shown, there is no actual analytical support for either Bingham's arbitrary decision to weigh the three valuations, or the random weightings he chooses (Bingham Mot. 14-15), and Sellers' conclusory statement about supposed "balance[]" is unavailing. (Opp. 11). So while Sellers are correct that the Court is "free to adopt different respective weightings or to disregard one, two, or all three of Bingham's valuation approaches" (*id.*), Bingham must still provide the Court an analytical framework for doing so, which he has failed to do. *See Nike, Inc.* v. *StockX LLC*, 2024 WL 3361411, at *16 (S.D.N.Y. July 10, 2024) (excluding valuation as unreliable where expert "offer[ed] no explanation for his choice of methodology").

---

[4] Sellers argue that MoneyLion relied on market-based approaches to value Malka when acquiring it. (Opp. 10). But MoneyLion never challenged the use of a market approach. And, of course, at the time MoneyLion was valuing Malka it was doing so for business purposes, not submitting a damages model to the Court subject to *Daubert*, as the parties are doing now.

4

Sellers also attempt to dismiss as "nitpick[ing]" MoneyLion's criticism of Bingham's reliance on a 2005 article to support his "5 percent rounded control premium" assumption. (Opp. 10). But as demonstrated in the Bingham Motion, the article has no application to the valuation of Malka, because the article was intended to assist in valuing ***public companies going through bankruptcy***; the article even acknowledged there was insufficient data to support its application to private companies. (Bingham Mot. 12). Sellers offer no substantive response to these limitations, which make Bingham's reliance on it for opinions about Malka unreliable. This is not merely a matter of weight, it renders Bingham's opinion inadmissible. *See, e.g.*, *Daniels-Feasel* v. *Forest Pharms., Inc.*, 2021 WL 4037820, at *8 (S.D.N.Y. Sept. 3, 2021) (excluding testimony where expert "cherry-pick[ed]" sources "while disregarding the limitations expressed by the studies he cite[d]"), *aff'd*, 2023 WL 4837521 (2d Cir. July 28, 2023).

Unable to defend Bingham's opinions, Sellers attempt to draw a false equivalency between Bingham's and Gompers's valuations. (*See* Opp. 10). But unlike Bingham, Gompers provided reliable support for his assumptions, which is ostensibly why Sellers declined to file their own *Daubert* motion. For example, a discounted cash flow analysis relies on several inputs, including revenue and EBITDA projections, which Bingham created based on his "professional judgment" (Dkt. 136, Ex. 2 at 143:2-19), while Gompers relied on projections provided by Malka's management at the time of the transaction. (Dkt. 136, Ex. 6 ¶26). Because Bingham failed to provide any such support for his assumptions, his valuation methodologies are unreliable, and his resulting valuation must be excluded. *Nimely* v. *City of New York*, 414 F.3d 381, 396 (2d. Cir. 2005) ("[R]eliability within the meaning of Rule 702 requires a sufficiently rigorous analytical connection between that methodology and the expert's conclusions.").

Sellers criticize several aspects of Gompers's damages analysis (Opp. 7), but their criticisms are irrelevant to these Motions because Sellers have not filed a *Daubert* motion. In any event, the criticisms are meritless. (*See* Dkt. 136, Ex. 6 ¶¶23-29 (rebutting Sellers' criticisms)).

### B. Sellers' Opposition Confirms that Bingham's Speculation About Supposed "Synergies" (Opinion 3) Is Unreliable.

To justify his conclusion, based on his flawed valuation analysis, that Malka was worth much more to MoneyLion than its actual value, Bingham relies on the asserted "synergies" MoneyLion would receive from the transaction. To support that conclusion, Bingham relies on "contemporaneous MoneyLion documents and public statements." (Opp. 12). But while Bingham can consider documentary evidence, an expert's testimony is inadmissible where it simply repeats information "the Court is fully capable of understanding without assistance from an expert." *Hamrit* v. *Citigroup Glob. Markets Inc.*, 2024 WL 4891889, at *5 (S.D.N.Y. Nov. 26, 2024). In any event, the evidence Bingham relies on, at most, tends to show that by acquiring Malka, MoneyLion benefited from synergies and not, as Bingham speculates, that MoneyLion intended to pay more than Malka's value because of these supposed synergies. *See Jupiter,* 2010 WL 11623400, at *3. And Bingham's arbitrary quantification of the supposed synergies is equally unsupported by any analysis or evidence. In the end, Bingham has offered no objective, replicable methodology to support his conclusion that the so-called "synergies" on which he relies justified Malka's purchase price despite its much lower value.

### C. Sellers' Opposition Confirms that Bingham's Testimony Concerning the "Digital Marketing Space" (Opinion 4) Is Unreliable and Unhelpful.

Finally, Sellers fail to provide any basis to support Bingham's counterfactual speculation that MoneyLion would have agreed to Malka's purchase price even if MoneyLion had been aware

6

of Malka's lack of profitability and increasing losses, because companies in the "digital marketing space" are valued based on revenue and market share. (Ramesh Decl., Ex. 1 ¶118).

Sellers attempt to bolster Bingham's opinion by pointing to the negative EBITDA margins of one of the companies Bingham referenced in one of his valuations, and by comparing Malka to software-as-service companies ("SaaS"). (Opp. 13-14). But Bingham did not select the aforementioned company using any replicable methodology or analysis, nor did he provide any analytical support for his comparison of Malka to SaaS companies, rendering any analysis based on these comparisons unreliable and irrelevant. (Bingham Mot. 21); *Alto* v. *Sun Pharmaceutical Indus., Inc.*, 2021 WL 4803582, at *6 (S.D.N.Y. Oct. 13, 2021) ("[A]n expert basing his opinion solely on his experience must do more than aver conclusorily that his experience led to his opinion."). Sellers offer nothing to help Bingham bridge this gap.[5]

Finally, Sellers cannot explain how Bingham can, on the one hand, value Malka using an income approach, which is premised on the idea that a company's value is based on its future profit generation (Ramesh Decl., Ex. 1 ¶76), and on the other hand, suggest profitability is irrelevant to Malka's valuation. (*Id.* ¶118). Instead, Sellers simply claim in a single conclusory sentence that there is no internal inconsistency. (Opp. 15). This is obviously insufficient to save Bingham's Fourth Opinion.

---

[5] The fact that the MIPA modifies how EBITDA is calculated for the earnouts (Opp. 14-15) does nothing to discredit MoneyLion's reliance on Sellers' misrepresentations regarding Malka's profitability. (Dkt. 144 at 55-56). Sellers also now claim that Bingham's reliance on SaaS companies was appropriate because MoneyLion operates like an SaaS (Opp. 15), but, even if true, this does not explain why Malka should be valued like an SaaS, when it did not operate as one. (Bingham Mot. 21).

7

### III.   MONEYLION'S *DAUBERT* MOTION CONCERNING THE TESTIMONY OF LARSON SHOULD BE GRANTED.

#### A. The Court Should Exclude Larson's Opinion that the MIPA Requires the Application of Unspecified "Historical Accounting Principles."

Larson's opinion that the MIPA requires the application of Malka's "historical accounting principles" is improper contract interpretation dressed up as expert testimony. Sellers' Opposition does not cure this fatal flaw. Instead, Sellers make the conclusory, circular argument that Larson does not offer an improper legal opinion because her declaration states that she is "offer[ing] no legal opinions." (Opp. 17). But Sellers' own description of Larson's opinion demonstrates otherwise. Sellers assert that "Larson's Opinion 1 is that … MoneyLion's use of a GAAP-based income statement, rather than one based on Malka's historical accounting principles … is unsupported and inconsistent with Schedule B of the MIPA." (*Id.*) In other words, Larson is concluding, based on *her* reading of the MIPA, that MoneyLion should have applied "Malka's historical accounting principles" rather than GAAP. Larson is engaging in contractual interpretation, which is a legal conclusion, on the central issue in this case (*e.g.*, Dkt. 144 at 5), thereby interfering with the Court's role as the arbiter of legal issues. As a result, her opinion must be excluded under *Daubert* and Federal Rule of Evidence 701.

Despite Sellers' arguments to the contrary, Dudney's approach is fundamentally different. As explained in MoneyLion's opening brief, unlike Larson, Dudney recounts ***what MoneyLion and its counsel contend*** the MIPA requires and then does actual accounting work (*i.e.*, he adjusts the Financial Statements and performs the 2021 and 2022 Earnout calculations) consistent with those contentions. (Larson Mot. 4). Contrary to Sellers' assertions, Dudney does not "opine[] about the meaning of Section 3.06 of, and Schedules A and B to, the MIPA." (Opp. 16). To the contrary, Dudney makes clear that he analyzed Malka's Financial Statements against his

8

"understanding" of Schedules A and B—(*see* Dkt. 140, Ex. 2 ¶¶2, 44-45, 59)—and that understanding ***derives solely from "assumptions provided by Counsel"*** and what ***"MoneyLion asserts"*** the MIPA says. (Dkt. 140, Ex. 1 ¶¶4 n.6, 89; *id.*, Ex. 3 ¶1 n.2). Larson, on the other hand, does no real accounting work. She just opines on the MIPA's meaning based on ***her own "reading" and "analysis" and "common sense"*** and then blesses the Sellers' prior Earnout calculations as supposedly consistent with the MIPA. (Ramesh Decl., Ex. 2 ¶¶43-44; Dkt. 140, Ex. 6 at 173:8-12).

Sellers try to explain away Larson's defective contractual interpretation as "firmly grounded in her accounting expertise" (Opp. 17), but this is easily dismissed. Not only does Larson's training as an accountant provide her with no basis to engage in this type of contract interpretation, but, as a matter of law, even if an expert's "testimony is couched in terms of industry practices, the expert still may not, under any circumstances, opine on the ultimate legal issue in the case." *Am. Empire Surplus Lines Ins. Co.* v. *J.R. Contracting & Env't Consulting, Inc.*, 2024 WL 3638329, at *10 (S.D.N.Y. Aug. 2, 2024); *see also id.* at *9 n.9 ("Rule 704 was not intended to allow experts to offer opinions embodying legal conclusions.").

Sellers' argument that Larson's legal interpretation "does not come close" to the expert opinion excluded in *J.R. Contracting*—which Sellers base on the fact that the expert report in *J.R. Contracting* "includ[ed] citations to case law" (Opp. 19)—shows that Sellers are missing the point. *J.R. Contracting* stands for the proposition that, ***labels aside***, courts should exclude expert opinion testimony that, like Larson's, "contains legal conclusions regarding interpretation of [a contract]." 2024 WL 3638329, at *10. That is why the *J.R. Contracting* court excluded the expert's opinions despite the proponent's arguments that the opinions were properly based on the expert's "experience in the insurance industry" and "standard customs and practices in the insurance

9

industry." *Id.* The court explained that an expert's opinion should be excluded if it "proffer[s] [the expert's] own version of contract[ ] interpretation," which "clearly impinge[s] upon the province of the Court." *Id.*[6] Larson's opinion should be excluded on that basis.

Sellers also argue that Larson's failure to conduct an independent review of Malka's historical accounting practices should be excused because, according to Sellers, those "practices are not in dispute." (Opp. 20). Whether they are is difficult to know because Sellers' account of their practices keeps changing. (*Compare* Dkt. 140, Ex. 5 at MoneyLion_01846528 ("U.S. GAAP, except … the Company's historical revenue recognition principles, which require the Company to recognize into revenue noncancelable deposits on contracts … "), *with* Ramesh Decl., Ex. 2 ¶65 ("[Malka] historically recognized revenue when invoices were generated"); *see also* Dkt. 159 at 34 (Sellers asserting that the representation of Malka's "minimal" noncompliance with ASC 606 is consistent with Dudney's findings)). In any event, Sellers' argument ignores the point, which is that Larson failed to review Malka's practices and thus cannot reliably opine on what they were or how to apply them. (Larson Mot. 9-10).

### B. Larson's Application of Malka's Historical Accounting Principles Is Unreliable and Unhelpful.

Several of Larson's other opinions should be excluded for the independent reason that they are unreliable and unhelpful to this Court. These opinions relate to MoneyLion's 2022 Earnout adjustments to Malka's 401(k) contributions, severances, bonuses, retained teams, and revenue recognition. With respect to each of these issues, Larson bases her opinions on her own "common

---

[6] Similarly, Sellers' attempt (Opp. 19 n.2) to distinguish *State of New York* v. *United Parcel Serv., Inc.*, 2016 WL 4735368 (S.D.N.Y. Sept. 10, 2016) because it involved the exclusion of an expert who lacked sufficient training in the area in which he testified fails. *United Parcel* makes clear that, even in a bench trial, experts "may not give testimony stating ultimate legal conclusions based on [] facts" within the "[trier of fact's] province." *Id.* at *4.

sense" reading of the MIPA, while ignoring contradictory evidence. Sellers' Opposition does not meaningfully engage with MoneyLion's criticisms of these opinions, and they should accordingly be excluded.

### 1. 401(k) Contributions, Severance, and Bonuses

Larson's criticism of MoneyLion's 2022 Earnout adjustments concerning Malka's 401(k) contributions, severance, and bonuses, are based on her opinion that the adjustments "deviat[ed] from the Company's historical practices and the MIPA." (Ramesh Decl., Ex. 2 ¶¶79-80, 98). But Larson is not qualified to opine on Malka's historical business practices or the meaning of the MIPA. Moreover, even the MIPA does not discuss Malka's historical *business* practices, such as whether Malka matched 401(k) contributions or provided severance or bonus payments. Accordingly, there is simply no basis for Larson to opine on these issues.

Sellers do not engage with any of this, but rather try to support Larson's opinion with evidence of Malka's business practices, which the Court is perfectly capable of interpreting without Larson's essentially lay opinion. *See Hamrit*, 2024 WL 4891889, at *5.

### 2. Retained Teams

Larson opines that MoneyLion improperly adjusted Sellers' 2022 Earnout calculation for "retained teams" of Malka employees who provided intercompany services to MoneyLion, because the MIPA does not explicitly contemplate such adjustments. (Ramesh Decl., Ex. 2 ¶¶104-10). This "opinion" is not an expert opinion since it involves no expert accounting analysis, but rather simply narrates Sellers' theory of the case. (*See* Larson Mot. 14; *Csikos* v. *S.M. Constr. & Contracting, Inc.*, 2022 WL 3211462, at *6 (S.D.N.Y. Aug. 9, 2022) (excluding expert opinions that "serve[d] only to buttress [defendant's] theory of the case").

Because Sellers fail to respond to this dispositive point, and merely restate their litigation position (Opp. 22), Larson's opinion should be excluded.

11

### 3. Revenue Recognition

Larson's testimony that some of Malka's contracts fit within the Schedule A exception for "noncancelable deposits" is equally unhelpful to the Court. As MoneyLion argued in its opening brief, among other things, Larson's opinions on this issue are not based on any accounting expertise, but rather on her supposed "common sense" and say-so. (Larson Mot. 14-18). Once again, Sellers simply ignore these deficiencies, effectively conceding them, and instead attack Dudney's conclusions, which Sellers chose not to challenge. (Opp. 23).

For all of the foregoing reasons, Larson's aforementioned opinions are unhelpful and unreliable, and should be excluded.

## CONCLUSION

For all of the foregoing reasons, the Motions should be granted.

Dated: January 14, 2025

          CAHILL GORDON & REINDEL LLP

          By: /s/ Sheila C. Ramesh
          Herbert S. Washer
          Edward N. Moss
          Sheila C. Ramesh
          Adam S. Mintz
          32 Old Slip
          New York, New York 10005
          212-701-3000
          hwasher@cahill.com
          emoss@cahill.com
          sramesh@cahill.com
          amintz@cahill.com

*Attorneys for Defendant and Counterclaim-Plaintiff MoneyLion Technologies Inc. and Third-Party Plaintiff MoneyLion Inc.*

.

## CERTIFICATION PURSUANT TO S.D.N.Y. LOCAL RULE 7.1(c)

I hereby certify that this memorandum of law contains 3,486 words as calculated by the word-processing program, exclusive of caption, table of contents, table of authorities and signature block, which is in compliance with Local Civil Rule 7.1(c) of the Southern District of New York.

Dated: January 14, 2025              By: /s/ Sheila C. Ramesh
        New York, New York                    Sheila C. Ramesh