UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JEFFREY FROMMER, LYUSEN (LOUIS) KRUBICH,
DANIEL FRIED, and PAT CAPRA,

        Plaintiffs,

    v.

MONEYLION TECHNOLOGIES INC. and CONTINENTAL
STOCK TRANSFER & TRUST COMPANY,[1]

    Defendants,

MONEYLION TECHNOLOGIES INC.,

        Counterclaim Plaintiff,

    v.

JEFFREY FROMMER, LYUSEN (LOUIS) KRUBICH,
DANIEL FRIED, and PAT CAPRA,

        Counterclaim Defendants.

MONEYLION INC.,

        Third-Party Plaintiff,

    v.

JEFFREY FROMMER, LYUSEN (LOUIS) KRUBICH,
DANIEL FRIED, and PAT CAPRA,

        Third-Party Defendants.

---

Case No. 1:23-cv-06339-JMF

**JOINT PRETRIAL
ORDER**

---

[1] Defendant Continental Stock Transfer & Trust Company ("Continental") has been dismissed.  (ECF No. 30).

Pursuant to Federal Rule of Civil Procedure 16, Rule 6(A) of the Court's Individual Rules and Practices in Civil Cases, and the Court's Order dated August 29, 2024 (ECF No. 123) (the "Scheduling Order"), Plaintiffs, Counterclaim Defendants, and Third-Party Defendants Jeffrey Frommer, Lyusen (Louis) Krubich, Daniel Fried, and Pat Capra (collectively, "Sellers"), Defendant and Counterclaim Plaintiff MoneyLion Technologies Inc. ("MLTI"), and Third-Party Plaintiff MoneyLion Inc. ("MLI," and together with MLTI, "MoneyLion") respectfully submit this Joint Pretrial Order.

## I. The full caption of the action.

*See* cover page.

## II. The names, law firms, addresses, and telephone and fax numbers of trial counsel if not already listed on the docket.

All trial counsel are on the docket.

## III. Brief statement by plaintiff as to the basis of subject matter jurisdiction, and a brief statement by each other party as to the presence or absence of subject matter jurisdiction. Such statements shall include citations to all statutes relied on and relevant facts as to citizenship and jurisdictional amount.

### A. <u>Sellers' Statement</u>

The Court has subject matter jurisdiction over Sellers' claims pursuant to 28 U.S.C. § 1332(a)(1), because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00. Messrs. Frommer and Capra are citizens and residents of New Jersey, and Messrs. Krubich and Fried are citizens and residents of California. MoneyLion is a Delaware corporation with its principal place of business in New York. The parties seek damages totaling millions of dollars.

### B. <u>MoneyLion's Statement</u>

MoneyLion does not dispute subject-matter jurisdiction.

IV.    **Brief summary by each party of the claims and defenses that the party asserts remain to be tried, including citations to any statutes on which the party relies. Such summaries shall also identify all claims and defenses previously asserted that are not to be tried. The summaries should not recite any evidentiary matter.**

A.    <u>**Sellers' Summary**</u>

Sellers will try the following affirmative claims against MLTI:  (1) breach of the Membership Interest Purchase Agreement (the "MIPA"), which is governed by Delaware law; and (2) breach of the Registration Rights Agreement, which is governed by New York law, and various Restricted Stock Agreements, which are governed by Delaware law.  Sellers will prove that MoneyLion, in violation of all these agreements, imposed unlawful restrictions on Sellers' fully vested and earned shares of MoneyLion stock issued pursuant to the MIPA as:  (i) Closing Shares, which were issued beginning November 15, 2021 and which vested quarterly through September 30, 2022; and (ii) 2021 Earnout Payment shares, which were issued beginning March 28, 2022 and which vested quarterly through December 31, 2022.  Sellers will further establish that MLTI breached the MIPA by failing to issue the 2022 Earnout Payment shares, and that MLTI failed to act in accordance with the MIPA's dispute resolution provisions in connection with the 2022 Earnout Payment dispute.

MLTI has asserted counterclaims, and MLI has asserted third-party claims, against Sellers. (ECF No. 54).  Following the Court's Opinion and Order granting in part and denying in part Sellers' motion to dismiss (ECF No. 98), and the Court's Memorandum Opinion and Order denying MoneyLion's motion for leave to amend (ECF No. 114), MoneyLion's remaining claims are:  (1) violation of Section 10(b) of the Securities Exchange Act and Rule 10b-5 promulgated thereunder (Count III); (2) common law fraud (Count IV); (3) negligent misrepresentation (Count V); (4) breach of fiduciary duty (Count VI); (5) breach of contract – Section 3.04 of the MIPA (Count IX); (6) breach of contract – Section 3.12 of the MIPA (Count X); (7) breach of contract –

Section 3.14 of the MIPA (Count XI); (8) conversion of a promissory note (Count XII); (9) breach of contract – Section 3.17 (Count XIV); (10) breach of contract – Section 9.01 of the MIPA (Count XVI); (11) breach of contract – Section 5.02 of the MIPA (Count XVII); and (12) conversion of Malka's office equipment and other property (Count XIX).

Sellers deny all of MoneyLion's counterclaims and third-party claims. MoneyLion will not carry its burden to establish any element of its securities or common fraud claims, which are governed by Second Circuit and New York law, respectively. These claims, which allege that the Sellers misrepresented Malka's historical revenue- and expense-recognition accounting principles and/or its adoption of GAAP and ASC 606, are entirely inconsistent with the evidence. MoneyLion will not establish any material misrepresentation, in the MIPA or otherwise, or that any Seller acted with scienter. Nor will MoneyLion prove that it reasonably relied on any alleged accounting misstatement, in light of the detailed and specifically negotiated accounting disclosures in the MIPA (at Schedule A). MoneyLion also cannot show its reasonable reliance given its high degree of sophistication and pre-contractual, unrestricted access to Malka's books and records.

Beyond MoneyLion's inability to prove any pre-acquisition fraud, *a fortiori*, it cannot challenge its own issuance of the 2021 Earnout Payment four months after the acquisition and after MoneyLion had already made detailed adjustments to Malka's revenue in order to conform the figures to GAAP and ASC 606 for consolidation within MoneyLion's financial statements. MoneyLion also waived any claim for rescission because of its decision to issue the 2021 Earnout Payment after having actual knowledge that Malka did not follow GAAP and ASC 606.

Sellers have also interposed affirmative defenses to be tried. (ECF No. 104). These include MoneyLion's failure to mitigate damages in accordance with the MIPA by using commercially reasonable efforts to recover under the R&W Policy (as defined in the MIPA), an insurance policy

with $7.5 million of coverage for any MoneyLion losses resulting from inaccuracies in the MIPA's seller-side representations, *before* pursuing a claim against Sellers.

A more detailed description of Sellers' factual and legal claims, arguments and defenses can be found in their Proposed Findings of Fact and Conclusions of Law.

B.  **MoneyLion's Summary**

MoneyLion asserts twelve counterclaims that remain to be tried: (i) violations of Section 10(b) of the Securities Exchange Act (15 U.S.C. § 78j) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.1.10b-5) (Count III); (ii) common law fraud, in the inducement of MoneyLion to enter into the MIPA, and in connection with the 2021 and 2022 earnouts (Count IV); (iii) negligent misrepresentation in connection with the 2021 and 2022 earnouts (Count V); (iv) breach of fiduciary duty to MoneyLion and its shareholders for misappropriating company assets, falsifying information in support of the 2021 and 2022 earnouts, directing subordinates to misstate Malka's financial information, and forming a voting group without notifying MoneyLion management (Count VI); (v) breach of Section 3.04 of the MIPA (Count IX); (vi) breach of Section 3.12 of the MIPA (Count X); (vii) breach of Section 3.14 of the MIPA (Count XI); (viii) conversion of a promissory note (Count XII); (ix) breach of Section 3.17 of the MIPA (Count XIV); (x) breach of Section 9.01 of the MIPA (Count XVI); (xi) breach of Section 5.02 of the MIPA (Count XVII); and (xii) conversion of Malka office equipment and other property (Count XIX).

MoneyLion will establish that Sellers fraudulently induced MoneyLion to enter into the November 15, 2021, Membership Interest Purchase Agreement ("MIPA"), by making fraudulent misrepresentations and omissions to MoneyLion—in the MIPA, its Schedules, the Financial Statements incorporated by Section 3.06 of the MIPA, and in discussions and diligence leading up to the MIPA—concerning, Sellers' accounting practices at their company Malka, and the accuracy

of the Financial Statements and the financial information and representations contained therein, among other things.  MoneyLion will show that it conducted robust, industry-standard diligence using a reputable diligence firm and external counsel, and MoneyLion was entirely justified in relying on Sellers' representations.  MoneyLion will establish that Sellers similarly defrauded MoneyLion in connection with the 2021 Earnout, in support of which Sellers knowingly submitted false financial information.  Sellers' fraud also induced MoneyLion to inject over $8 million in capital into Malka.  MoneyLion will also show that Sellers fraudulently sought and obtained reimbursement for more than $180,000 in personal expenses, and that Pat Capra stole nearly $1.2 million in business from MoneyLion.  These and MoneyLion's other counterclaims are described in more detail in the accompanying Proposed Findings of Fact and Conclusions of Law, which is incorporated herein by reference.

MoneyLion denies all of Sellers' claims and asserts seven defenses that remain to be tried: (i) the Sellers' claims are barred because the Sellers have committed material breaches of the MIPA (Second Affirmative Defense); (ii) the Sellers' claims are barred because the MIPA was entered into on the basis of unilateral mistakes of fact (Third Affirmative Defense); (iii) the Sellers' claims are barred because they fraudulently induced MoneyLion to enter into the MIPA (Fourth Affirmative Defense); (iv) the Seller's claims are barred because they defrauded MoneyLion in connection with the calculation of the purchase price for the Sellers' interests in Malka, and in connection with the 2021 and 2022 earnouts (Fifth Affirmative Defense); (v) the Sellers' claims are barred, in whole or in part, by the doctrine of unclean hands (Sixth Affirmative Defense); (vi) the Sellers' claims are barred, in whole or in part, by the doctrine of equitable estoppel (Seventh Affirmative Defense); and (vii) the Sellers' claims are barred, in whole or in part, by the faithless

servant doctrine (Eighth Affirmative Defense).[2]  Principally, MoneyLion will establish that Sellers cannot recover under a contract they procured by fraud.  MoneyLion will also establish that even were it not for Sellers' fraud, their material breaches of representations in the MIPA, including Sellers' representations in Section 3.06 of the MIPA (concerning Sellers' Financial Statements and accounting practices) bar their recovery under the MIPA.  MoneyLion will also establish that Sellers committed fraud in connection with the 2021 and 2022 Earnouts, and failed to meet the EBITDA and revenue targets the MIPA set to secure the Earnouts.

A more detailed discussion of all of MoneyLion's factual and legal claims and arguments is contained in its accompanying Proposed Findings of Fact and Conclusions of Law, which is incorporated herein by reference.

### V.   Statement as to the number of trial days needed, whether the case is to be tried with or without a jury, and the parties' dates on which they will not be available.

The parties anticipate the need for 7 to 10 trial days.  The case will be tried without a jury.

In addition, the Court ordered the parties to "provide the Court with any dates on which they will not be available for trial during the months of January, February, and March of 2025." (ECF No. 123 at 3.)

**Sellers** are available on any dates except for February 5-7; February 17-21; March 4; and March 27-28, 2025.  If need be, Plaintiffs can be flexible on some of these dates.  Additionally, Plaintiffs must end court sessions on Fridays and on March 13, 2025 at 2:00 p.m., in light of the Jewish Sabbath and holidays.

---

[2] MoneyLion asserted one affirmative defense that is not to be tried:  (i) the Amended Complaint fails to state any claim on which relief may be granted (First Affirmative Defense). MoneyLion asserted seven claims that are not to be tried: (i) declaratory judgment concerning the interpretation and construction of certain sections of the MIPA; (ii) declaratory judgment concerning restricted shares; (iii) conversion of the restricted shares; (iv) breach of Section 3.06 of the MIPA; (v) breach of Section 3.15 of the MIPA; (vi) breach of Section 5.01 of the MIPA; and (vii) unjust enrichment.

**MoneyLion** is available for trial on any of the following dates: February 10-13; March 10-11, and 17-20, 24-26, 28-31, 2025.  Due to the availability of one its experts, MoneyLion would require at least one day in the following range in order to permit their testimony: March 24-26, 28-31, 2025.

**VI.    A joint statement summarizing the nature of the case, to be read to potential jurors during jury selection.**

Not applicable.  The case will be tried without a jury.

**VII.    A list of people, places, and institutions (in alphabetical order) that are likely to be mentioned during the course of the trial, to be read to potential jurors during jury selection**

Not applicable.  The case will be tried without a jury.

**VIII.    A statement as to whether all parties have consented to trial by a magistrate judge, without identifying which parties do or do not consent.**

The parties have not consented to trial by a magistrate judge.

**IX.    Any stipulations or agreed statements of fact or law to which all parties consent.**

*See* Exhibit A hereto.

**X.    A list of all trial witnesses (in alphabetical order), indicating whether such witness will testify in person or by deposition, whether such witnesses will require an interpreter, and a brief summary of the substance of each witness's testimony.**

**A.    Sellers' Witness List**

1.    Matthew Basdekis (in-person) (on both parties' lists)

Mr. Basdekis is Malka's former Head of Finance and currently works for MoneyLion.  Plaintiffs will call Mr. Basdekis as an adverse witness.  Plaintiffs anticipate that Mr. Basdekis will testify that Malka's pre-closing invoicing and accounting practices were truthfully and accurately described by Schedule A, whose final language he approved.   Plaintiffs anticipate that Mr. Basdekis will also testify about his work with MoneyLion's finance and accounting teams post-closing to adjust Malka's financials to comply with GAAP; his repeated communications with

MoneyLion personnel about Malka's historical non-GAAP accounting practices and the continued use of those practices for purposes of the 2021 and 2022 earnouts; his calculations of Malka's revenue and EBITDA for purposes of the 2021 and 2022 earnouts pursuant to the requirements of Schedule B, not GAAP or ASC 606; and Malka's discounted intercompany services provided to MoneyLion in 2022.

### 2.    Bruce Bingham (declaration)

Mr. Bingham is a Managing Director at Berkeley Research Group and is an expert witness offered by Sellers to rebut the opinions of Paul Gompers regarding Malka's valuation.  Mr. Bingham will testify by declaration about numerous flaws in Dr. Gompers's valuation approach and methodology.  In particular, Dr. Gompers does not define a standard of value, ignores the applicability of a market approach, relies on a discounted cash flow analysis that is based on inapplicable projections, and applies a flawed and significantly understated discount rate.  Mr. Bingham will testify as to his calculation of the fair market value of Malka based on information known or knowable at the time of the acquisition and will opine that the purchase price that MoneyLion paid for Malka was based primarily on anticipated synergies from adding Malka's marketing and content production capabilities to MoneyLion's banking platform.

### 3.    Pat Capra (declaration) (on both parties' lists)

Mr. Capra is one of the Sellers and was formerly the head of Malka Sports, a subsidiary of Malka that was sold to MoneyLion.  Mr. Capra will testify by declaration about Malka's business, including the business of Malka Sports, its client-driven invoicing practices, and conversations and meetings that he had and attended with MoneyLion personnel.  With respect to the so-called "Celebrity Transaction" alleged in MoneyLion's Counterclaims, Mr. Capra will testify about Malka's invoicing arrangement with Dan O'Brien Automotive.

Mr. Capra will also testify that the acquisition promised to (and did) provide valuable synergies for MoneyLion's business; and that only after MoneyLion's share price fell below $1.00, threatening its continued listing on the New York Stock Exchange, did MoneyLion executives try, first, to compel Sellers to accept a deferral of their make-whole and 2022 earnout payment shares, in breach of MoneyLion's contractual obligations—and then MoneyLion created alternative revenue and EBITDA calculations, again in breach of the parties' agreements, so it could reject making the 2022 earnout payment to which Sellers were entitled. Further, and again in breach of the agreements, MoneyLion wrongfully imposed and maintains a stop order burdening Mr. Capra's 47,873 vested shares held at Continental (MoneyLion's transfer agent). Mr. Capra will also testify that he has not violated any restrictive covenants, that Sellers did not ask MoneyLion to pay for any of their personal expenses, and that Malka's promissory note with Kalo Brands LLC was never assigned to another entity.

          4.     <u>Ryan Curran (declaration) (on both parties' lists)</u>

Mr. Curran was Malka's outside accountant and Sellers' personal accountant. Mr. Curran will testify by declaration about accounting and financial services that his firm provided to Malka prior to the acquisition, his preparation of Malka's reviewed financial statements for 2019 and 2020 in connection with Malka's loan application to ConnectOne Bank, the negotiation and drafting of the MIPA and its schedules, including the development of the language of the MIPA's schedules, and his preparation of Sellers' tax returns post-closing, including valuation work performed in connection with the preparation of those returns. With respect to the 2019 and 2020 financial statements, Mr. Curran will testify that he believed any adjustments to Malka's revenue needed in order to comply with GAAP and ASC 606 would not be material to ConnectOne. With

respect to Schedule A (whose final language he approved), Mr. Curran will testify that it truthfully and accurately described Malka's historical accounting principles.

5.    Daniel Fried (declaration) (on both parties' lists)

Mr. Fried is one of the Sellers and will testify by declaration about Malka's business, including its client-driven invoicing practices, and conversations and meetings that he had and attended with MoneyLion personnel.  With respect to the "Advance Payment Client" alleged in MoneyLion's Counterclaims, Mr. Fried will testify that Proximo Spirits requested to be invoiced $400,000 in advance for Malka projects.

Mr. Fried will also testify that  the acquisition promised to (and did) provide valuable synergies for MoneyLion's business; and that only after MoneyLion's share price fell below $1.00, threatening its continued listing on the New York Stock Exchange, did MoneyLion executives try, first, to compel Sellers to accept a deferral of their make-whole and 2022 earnout payment shares, in breach of MoneyLion's contractual obligations—and then MoneyLion created alternative revenue and EBITDA calculations, again in breach of the parties' agreements, so it could reject making the 2022 earnout payment to which Sellers were entitled.  Further, and again in breach of the agreements, MoneyLion wrongfully imposed and maintains a stop order burdening Mr. Fried's 60,786 vested shares held at Continental.  Mr. Fried will also testify that Sellers did not ask MoneyLion to pay for any of their personal expenses.

6.    Jeffrey Frommer (declaration) (on both parties' lists)

Mr. Frommer is one of the Sellers and will testify by declaration about Malka's business, including its client-driven invoicing practices, and conversations and meetings that he had and attended with MoneyLion personnel.  With respect to the acquisition, Mr. Frommer will testify that MoneyLion accepted the proposed purchase price of $75 million without any counteroffer,

proposing the mix of cash and equity consideration to which the parties would agree.  Mr. Frommer will also testify that he served in a project manager role during the acquisition, facilitating the due diligence process in coordination with Malka's counsel and Messrs. Basdekis and Curran.

Mr. Frommer will also testify that the acquisition promised to (and did) provide valuable synergies for MoneyLion's business; and that only after MoneyLion's share price fell below $1.00, threatening its continued listing on the New York Stock Exchange, did MoneyLion executives try, first, to compel Sellers to accept a deferral of their make-whole and 2022 earnout payment shares, in breach of MoneyLion's contractual obligations—and then MoneyLion created alternative revenue and EBITDA calculations, again in breach of the parties' agreements, so it could reject making the 2022 earnout payment to which Sellers were entitled.  Further, and again in breach of the agreements, MoneyLion wrongfully imposed and maintains a stop order burdening Mr. Frommer's 241,968 vested shares held at Continental.  Mr. Frommer will also testify that he has not violated any restrictive covenants and that Sellers did not ask MoneyLion to pay for any of their personal expenses.

7.    Brendan Gilmartin (by deposition) (on both parties' lists)

Mr. Gilmartin was a Rule 30(b)(6) deponent on behalf of nonparty CFGI, which was MoneyLion's due diligence advisor with respect to the acquisition.  His testimony primarily relates to CFGI's due diligence and quality-of-earnings report dated October 5, 2021, which identified numerous deviations from GAAP in Malka's accounting and found that these deviations could impact Malka's revenue, EBITDA, and net working capital; and noted that Malka's management had not performed an assessment to confirm or validate ASC 606 compliance, among other relevant findings.

8.     <u>Andrew Halbert (by deposition) (on both parties' lists)</u>

Mr. Halbert was a Rule 30(b)(6) deponent on behalf of nonparty Fox Rothschild LLP, which was Malka's counsel in connection with the acquisition.  His testimony primarily relates to the negotiation and drafting of the MIPA, including Sellers' edits to (i) Schedule A, which disclosed that Malka followed its historical revenue and cost recognition principles, not GAAP or ASC 606, and MoneyLion's request that Schedule A be revised to disclose Malka's additional GAAP deviations "aside from revenue recognition and contract costs"; (ii) Schedule B, which set forth the Revenue and EBITDA Calculation Principles governing Sellers' eligibility for the 2021 and 2022 Earnout Payments, including prescribed additions to calculated revenue and EBITDA that were intended to aid Sellers in obtaining the earnout payments; and (iii) other sections of the MIPA, which served to protect Sellers' ability to obtain the earnout payments.

9.     <u>Michael Harrington (by deposition) (on both parties' lists)</u>

Mr. Harrington is a former attorney at Fox Rothschild who was involved in the negotiation and drafting of the MIPA.  His testimony primarily relates to the negotiation and drafting of the MIPA—including Sellers' edits to (i) Schedule A, which disclosed that Malka followed its historical revenue and cost recognition principles, not GAAP or ASC 606, and MoneyLion's request that Schedule A be revised to disclose Malka's additional GAAP deviations "aside from revenue recognition and contract costs"; (ii) Schedule B, which set forth the Revenue and EBITDA Calculation Principles governing Sellers' eligibility for the 2021 and 2022 Earnout Payments, including prescribed additions to calculated revenue and EBITDA that were intended to aid Sellers in obtaining the earnout payments; and (iii) other sections of the MIPA, which served to protect Sellers' ability to obtain the earnout payments.

10.    Louis Krubich (declaration) (on both parties' lists)

Mr. Krubich is one of the Sellers and will testify by declaration about Malka's business, including its client-driven invoicing practices, and conversations and meetings that he had and attended with MoneyLion personnel.  With respect to invoicing, Mr. Krubich will testify that Malka typically sent an initial invoice for an upfront payment of at least 50 percent (referred to in Schedule A as a "non-cancelable deposit") and subsequent invoices based on particular client-driven invoicing dates or steps toward project completion (referred to in Schedule A as "milestones").

Mr. Krubich will also testify that the acquisition promised to (and did) provide valuable synergies for MoneyLion's business; and that only after MoneyLion's share price fell below $1.00, threatening its continued listing on the New York Stock Exchange, did MoneyLion executives try, first, to compel Sellers to accept a deferral of their make-whole and 2022 earnout payment shares, in breach of MoneyLion's contractual obligations—and then MoneyLion created alternative revenue and EBITDA calculations, again in breach of the parties' agreements, so it could reject making the 2022 earnout payment to which Sellers were entitled.  Further, and again in breach of the agreements, MoneyLion wrongfully imposed and maintains a stop order burdening Mr. Krubich's 246,466 vested shares held at Continental.  Mr. Krubich will also testify that he has not violated any restrictive covenants and that Sellers did not ask MoneyLion to pay for any of their personal expenses.

11.    Jennifer Larson, CPA, CFE (declaration)

Ms. Larson is an affirmative and rebuttal expert offered by Sellers.  She is a partner at Deloitte and will testify by declaration that, in determining that Sellers were not entitled to the 2022 earnout payment, MoneyLion improperly failed to comply with the Revenue and EBITDA

Calculation Principles set forth in Schedule B in multiple respects.  Ms. Larson will also rebut the opinions of Mr. Dudney regarding Malka's accounting and the earnouts.

12.     Michelle Lee (in-person) (on both parties' lists)

Ms. Lee is a member of the Strategic Finance group at MoneyLion.  Sellers will call Ms. Lee as an adverse witness. Sellers anticipate that Ms. Lee will testify about the due diligence process; the CFGI report; the drafting of Schedules A and B to the MIPA; her pre-acquisition communications with MoneyLion personnel about Schedules A and B—including communications expressly acknowledging that Malka was not representing that it followed GAAP; communications with DUAL, MoneyLion's representations-and-warranties insurer, including about CFGI's finding that Malka had numerous deviations from GAAP; MoneyLion's post-closing work to calculate Malka's net working capital on the basis of Malka's historical accounting principles, as disclosed in Schedule A; MoneyLion's post-closing work to adjust Malka's revenue to comply with GAAP; MoneyLion's determination that Malka achieved the 2021 earnout, accepting Mr. Basdekis's figures calculated in accordance with Malka's historical accounting principles (not GAAP); and MoneyLion's tracking of Malka's progress towards the 2022 earnout using, including communications in which MoneyLion acknowledged that the earnouts were based on Malka's historical accounting principles (not GAAP).

13.     Ivy Okoniewski (by deposition) (on both parties' lists)

Ms. Okoniewski was a Rule 30(b)(6) deponent on behalf of nonparty DUAL Commercial LLC, which was MoneyLion's representations-and-warranties insurer in connection with the Acquisition.  Her testimony primarily relates to DUAL's knowledge about Malka's accounting practices, as disclosed in the MIPA and its schedules.  This includes DUAL's knowledge of CFGI's reported findings that Malka's accounting did not conform to GAAP; the advice of

DUAL's own due diligence advisor, Daszkal Bolton LLP, that Malka's financial statements "would be materially different if prepared under GAAP"; and DUAL's interpretation of Schedule A, shared with MoneyLion, that Malka did not recognize revenue in accordance with GAAP and that Schedule A's incorporation of Malka's "historical revenue recognition principles" was a "massive carveout" from GAAP.

14. <u>Michael Scalia (in-person) (on both parties' lists)</u>

Mr. Scalia is an accountant and MoneyLion's Head of SEC Reporting.  Sellers will call him as an adverse witness.  Sellers anticipate that Mr. Scalia will testify about the work that he and MoneyLion's accounting department did shortly after the closing to adjust Malka's revenue to comply with GAAP, including significant GAAP-based adjustments to Malka's 2021 revenue which MoneyLion calculated long before it approved issuance of the 2021 earnout; communications with MoneyLion finance personnel about that work; MoneyLion and CFGI's quarterly valuations of the 2022 earnout as contingent consideration; and use of the Malka's non-GAAP revenue and EBITDA to track Malka's progress towards the 2022 earnout.

*** 

Plaintiffs state that none of the above-listed witnesses will require an interpreter.

**B.**     **<u>MoneyLion's Witness List</u>**[3]

1. <u>Matthew Basdekis (affidavit) (on both parties' lists)</u>

Matthew Basdekis is the Chief of Staff of Malka and was the Head of Finance at Malka, from approximately March 2020 until February 2024.  Mr. Basdekis will testify that at all times prior to the November 15, 2021 acquisition of Malka by MoneyLion (the "Acquisition"), Malka's

---

[3] MoneyLion reserves all rights to alter or amend this witness list and the descriptions below contain a brief, non-exhaustive summary of the topics about which each witness is expected to testify.

practice was to recognize revenue at the time of invoicing, regardless of whether any of the relevant work was completed, which is inconsistent with GAAP. He will testify that this practice continued following the Acquisition. Mr. Basdekis will also testify that despite his repeatedly telling Jeffrey Frommer not to misrepresent to MoneyLion and CFGI (during due diligence, Acquisition negotiations, and elsewhere) that Malka was materially GAAP-compliant, Mr. Frommer ignored him and repeatedly made such misrepresentations. Mr. Basdekis will testify that at no time before the acquisition, nor before the issuance of the restricted shares in connection with the 2021 earnout, nor before MoneyLion's rejection of the 2022 earnout, did he inform MoneyLion of Malka's true accounting practices. In addition, Mr. Basdekis will testify that the Sellers improperly billed expenses to MoneyLion that were personal in nature and not business-related.

Mr. Basdekis will submit an affidavit in lieu of live direct testimony and will not require an interpreter for cross-examination.

2.    Pat Capra (in-person) (on both parties' lists)

MoneyLion will call Mr. Capra, one of the Sellers, as an adverse witness, to testify about his knowledge of, and involvement in, the fraud against MoneyLion.

Mr. Capra will testify in person and will not require an interpreter.

3.    Diwakar ("Dee") Choubey (affidavit)

Diwakar ("Dee") Choubey is the cofounder and Chief Executive Officer of MoneyLion. Mr. Choubey will testify that it was vital to him in evaluating the proposed acquisition of Malka that Malka was materially GAAP-compliant as represented by Sellers in Malka's financial statements, and that he would not have authorized the Acquisition if he had known of Malka's true accounting practices, which were revealed to him only in mid-2023. Mr. Choubey will also testify that leading up to the Acquisition, he emphasized to Sellers the importance of disclosing to him

any prior personal misconduct that could create risk for MoneyLion, since Sellers would remain employed by Malka when it was a MoneyLion subsidiary. Mr. Choubey will testify that had he known of the serious character issues Sellers concealed from him, he would not have permitted the transaction to go forward.

Mr. Choubey will submit an affidavit in lieu of live direct testimony and will not require an interpreter for cross-examination.

4.    Richard Correia (affidavit)

Richard Correia is the President, Chief Financial Officer, and Treasurer of MoneyLion. Mr. Correia will testify that Jeffrey Frommer pitched the Acquisition to MoneyLion in June 2021 with fraudulent financial statements representing that Malka was both profitable and GAAP-compliant. Mr. Correia will testify that these historical financial statements were essential to MoneyLion's valuation of Malka and willingness to proceed with the Acquisition. Mr. Correia will testify that during a telephone call in early November 2021 (before the Acquisition), Mr. Frommer expressly assured him that Malka recognized revenue in accordance with GAAP, with the exception of rare and immaterial non-cancellable cash deposits. Mr. Correia will testify that, based on these false representations, MoneyLion agreed to Sellers' revisions to Schedules A and B of the MIPA and to proceed with the Acquisition. Mr. Correia will also testify about the discovery of Sellers' fraud, MoneyLion's denial of the 2022 earnout, and the termination of Sellers.

Mr. Correia will submit an affidavit in lieu of live direct testimony and will not require an interpreter for cross-examination.

5.    Scott Cowan (by deposition)

Scott Cowan is a partner in DLA Piper LLP's corporate practice, specializing in venture capital, mergers and acquisitions, and capital markets. Mr. Cowan was counsel to MoneyLion in

connection with the Acquisition and was involved in negotiating, drafting, and revising the MIPA, including Schedules A and B thereto. He will testify that DLA Piper received comments from DUAL (the representations and warranties insurer for the Acquisition), insisting that Schedule A be revised to explicitly enumerate all of Malka's accounting practices that deviated from GAAP. Mr. Cowan will testify that he passed on DUAL's demand to Fox Rothschild, Sellers' Acquisition counsel. Mr. Cowan will testify that he made clear to Fox Rothschild that Schedule A must include an exhaustive list of Malka's GAAP deviations. Mr. Cowan will also testify that, over the course of the Acquisition, it was never suggested to DLA Piper that there were GAAP deviations in Malka's accounting that were not included in Schedule A. Finally, Mr. Cowan will testify that the MIPA was intended to, and did in fact incorporate, the representations made within Malka's 2019 and 2020 financial statements, including the representations within Ryan Curran's Independent Accountants' Review Reports annexed thereto.

Mr. Cowan's testimony will be presented through deposition designations, and he will not require an interpreter.

      6.    <u>Ryan Curran (in-person) (on both parties' lists)</u>

Ryan Curran was Malka's external accountant from approximately December 2016 until May 2023. Mr. Curran will testify about his involvement in preparing Malka's 2019 and 2020 financial statements, including the sources of the information contained in them, his review of such information, the representations in the statements, and the accuracy of those statements and the information contained in them. Mr. Curran will also testify about the accuracy of statements Mr. Frommer made to MoneyLion concerning Malka's supposed compliance with GAAP and the accounting principles set forth in the MIPA and Schedules A and B thereto.

Mr. Curran will testify in person and will not require an interpreter.

7.    <u>Louis Dudney, CPA (affidavit)</u>

Louis Dudney, CPA, CFF, is a Partner and Managing Director at AlixPartners, LLP. MoneyLion has engaged Mr. Dudney as an accounting expert to analyze the accuracy of Malka's 2019 and 2020 financial statements and 2021 interim financial statement.  Mr. Dudney will testify that these financial statements were not prepared in accordance with GAAP or Schedule A to the MIPA, contrary to the representations made to MoneyLion by Sellers in the MIPA and elsewhere. Mr. Dudney will testify that, had Malka's financial statements in fact been prepared in accordance with GAAP and Schedule A to the MIPA, the revenue and earnings before interest, taxes, depreciation, and amortization ("EBITDA") figures represented in those statements would have been materially lower.  In addition, Mr. Dudney will testify that Sellers did not meet the thresholds necessary to receive the 2021 and 2022 earnouts because Malka's EBITDA—when calculated in compliance with GAAP and Schedule B to the MIPA—did not meet the required thresholds.

Mr. Dudney will submit an affidavit in lieu of live direct testimony and will not require an interpreter for cross-examination.

8.    <u>Daniel Fried (in-person) (on both parties' lists)</u>

MoneyLion will call Mr. Capra, one of the Sellers, as an adverse witness, to testify about his knowledge of and involvement in the fraud against MoneyLion.

Mr. Fried will testify in person and will not require an interpreter.

9.    <u>Jeffrey Frommer (in-person) (on both parties' lists)</u>

MoneyLion will call Mr. Frommer, one of the Sellers, as an adverse witness, to testify about his knowledge of, involvement in, and leadership role in the fraud against MoneyLion.

Mr. Frommer will testify in person and will not require an interpreter.

10.    Brendan Gilmartin (by deposition) (on both parties' lists)

Brendan Gilmartin is a partner in CFGI's Transaction Advisory Services Group, specializing in financial due diligence.  Mr. Gilmartin will testify about CFGI's due diligence for MoneyLion in connection with the Acquisition, including the scope of that due diligence and CFGI's conclusions, which are outlined in CFGI's quality of earnings report.  Mr. Gilmartin will testify that the analyses in CFGI's quality of earnings report were primarily informed by materials provided by, and conversations with, Malka's management.  Mr. Gilmartin will testify that Malka's management represented to CFGI that Malka was GAAP- and ASC 606-compliant, and that any GAAP deviations in Malka's accounting were minimal.

Mr. Gilmartin's testimony will be presented through deposition designations, and he will not require an interpreter.

11.    Paul A. Gompers, PhD. (affidavit)

Dr. Paul A. Gompers is the Eugene Holman Professor of Business Administration and Chair of Elective Curriculum at the Harvard Business School, and he has been retained by MoneyLion as an expert witness.  Professor Gompers will testify regarding damages sustained by MoneyLion due to misrepresentations made by Sellers, and rebut certain portions of the testimony of Sellers' expert, Bruce Bingham.  Professor Gompers's testimony will include his valuation of Malka as it exists (as opposed to what it was represented by Sellers to be).

Professor Gompers will submit an affidavit in lieu of live direct testimony and will not require an interpreter for cross-examination.

12.    Andrew Halbert (by deposition)

Andrew Halbert is an attorney at Fox Rothschild LLP and represented Malka in connection with the Acquisition.  Mr. Halbert will testify that Sellers were aware that Malka was not GAAP-

compliant before the Acquisition, and will also acknowledge that, during the same time period, Mr. Frommer nonetheless represented that Malka's practices had historically been aligned with GAAP.  Mr. Halbert will also testify that he discussed drafts of Schedule A with Mr. Frommer, Mr. Basdekis, and Mr. Curran, and that after receiving feedback from MoneyLion's insurer, Fox Rothschild worked with Sellers to include of Malka's all deviations from GAAP in Schedule A.

Mr. Halbert's testimony will be presented through deposition designations, and he will not require an interpreter.

13.    <u>Michael Harrington (by deposition)</u>

Michael Harrington is a former partner of Fox Rothschild LLP.  Mr. Harrington was counsel to Malka in connection with the Acquisition and was involved in negotiating, drafting, and revising the MIPA, including Schedules A and B thereto.  Mr. Harrington will testify that, in connection with negotiating and revising the Schedules, he corresponded primarily with Sellers and Matthew Basdekis.  He will further testify that Daniel Fried and Pat Capra were involved in some, but not all, of those conversations.  Mr. Harrington will testify that Sellers knew that Malka was not GAAP-compliant.

Mr. Harrington's testimony will also cover Sellers' misappropriation of MoneyLion's assets.  He will testify that, as a general matter, any legal services Fox Rothschild LLP provided Sellers after the Acquisition would properly be considered personal legal advice to Sellers, rather than legal advice to Malka.

Mr. Harrington's testimony will be presented through deposition designations, and he will not require an interpreter.

14. <u>Louis Krubich (in-person) (on both parties' lists)</u>

MoneyLion will call Mr. Krubich, one of Sellers, as an adverse witness, to testify about his knowledge of and involvement in the fraud against MoneyLion.

Mr. Krubich will testify in person and will not require an interpreter.

15. <u>Michelle Lee (affidavit) (on both parties' lists)</u>

Michelle Lee is a senior manager in MoneyLion's Strategic Finance department.  At the time of the Acquisition, Ms. Lee was a junior manager.  Ms. Lee will testify about her review of CFGI's due diligence findings and her passive involvement in the negotiations of Schedules A and B.  Ms. Lee will testify that, prior to the Acquisition, Sellers represented Malka to be substantially compliant with GAAP.  Ms. Lee will also testify that MoneyLion revised Schedules A and B to allow for the recognition of "noncancelable cash deposits," as requested by Malka—but only after her superior, Mr. Correia, spoke with Mr. Frommer.   Ms. Lee will also confirm that none of the Sellers ever disclosed that there were non-GAAP revenue recognition practices at Malka beyond those enumerated in Schedules A and B.  Finally, Ms. Lee will explain why information she learned from Mr. Basdekis about Malka's accounting after the acquisition did not notify her of Sellers' fraud.

Ms. Lee will submit an affidavit in lieu of live direct testimony and will not require an interpreter for cross-examination.

16. <u>Christopher Murphy (by deposition)</u>

Christopher Murphy is a partner in CFGI's Accounting Advisory Department, specializing in technical accounting.  Mr. Murphy will testify that MoneyLion engaged CFGI to perform due diligence, including the scope of that due diligence, and prepare a quality of earnings report, an ASC 805 business combination accounting memorandum, and a valuation report in connection

with the Acquisition.  Mr. Murphy will also testify that the analyses in CFGI's quality of earnings report were primarily informed by materials provided by and conversations with Malka's management.  Mr. Murphy will testify that Malka's management represented to CFGI that Malka's accounting practices were ASC 606-compliant and that any non-compliance was minimal.

Mr. Murphy's testimony will be presented through deposition designations, and he will not require an interpreter.

17.    <u>Ivy Okoniewski (by deposition) (on both parties' lists)</u>

Ivy Okoniewski is Senior Vice President in the Transactional Risk Group of DUAL (the Acquisition's representations and warranties insurer), specializing in representations and warranties insurance for mergers and acquisitions.  Ms. Okoniewski will testify that DUAL insisted that Sellers identify all of Malka's GAAP deviations in Schedule A of the MIPA.   Ms. Okoniewski will also testify that the due diligence conducted by CFGI in connection with the Acquisition complied with industry standards.  Specifically, she will testify that a quality of earnings analysis is the standard form of due diligence for acquisitions of unaudited targets, given the impracticability of performing an audit.  She will testify that an audit generally takes months to perform, and that she has never witnessed a buyer perform a pre-acquisition audit of a target to verify unaudited financials.

Ms. Okoniewski's testimony will be presented through deposition designations, and she will not require an interpreter.

18.    ~~Israa Saed (in-person)~~

~~Israa Saed was Director of Finance at Malka from late 2019 until September 2021.  Ms. Saed will testify about Malka's accounting and budgeting practices, including discrepancies in project invoices and vendor payments that were known to Sellers but not, to her knowledge,~~

~~disclosed to MoneyLion.  She will also testify about the undisclosed hostile work environment at~~

~~Malka created by the Sellers, which Ms. Saed reported to Malka's human resources department.~~

~~Ms. Saed will testify in person and will not require an interpreter.~~

19.     Michael Scalia (affidavit) (on both parties' lists)

Michael Scalia is the Director of SEC Reporting, Technical Accounting, and Sarbanes-Oxley Act Compliance of MoneyLion.  During the relevant time period, Mr.  Scalia was solely Director of SEC Reporting.  Mr. Scalia will testify about a revenue recognition adjustment exercise that he conducted concerning Malka in preparation for MoneyLion's 2021 10-K filing.  Mr. Scalia will testify that the exercise only covered the six-week period between November 15, 2021 (the Acquisition date) and December 31, 2021, and did not reveal to him that Sellers had misrepresented Malka's compliance with GAAP and MIPA Schedules A and B.  Mr. Scalia will also testify that he was not directly involved in calculating the 2021 and 2022 Earnout Payments.

Mr. Scalia will submit an affidavit in lieu of live direct testimony and will not require an interpreter for cross-examination.

20.     Mark Torossian (affidavit)

Mark Torossian is the Chief Accounting Officer of MoneyLion.  Mr. Torossian joined MoneyLion after the Acquisition.  Mr. Torossian will testify about how he determined, in late 2022, that Malka's NetSuite accounting software was not set up to recognize revenue in a manner consistent with GAAP and MIPA Schedules A and B.  Mr. Torossian will testify about how his subsequent investigation revealed a pattern in which Sellers would artificially boost Malka's revenue by issuing unusually large invoices towards the end of the fiscal year.  Mr. Torossian will testify that, upon closer inspection, he discovered that these invoices related to work that would not be performed until well after the fiscal year ended, so the revenue associated with those

invoices was improperly recognized upon invoicing.  In addition, he will testify that Sellers deferred the recognition of expenses associated with those invoices until the expenses were actually incurred, allowing Malka to artificially inflate its profitability.  Mr. Torossian will also testify about his subsequent evaluation of Sellers' request for the 2022 earnout, and the 2021 earnout for which restricted shares had already been issued, which determined that Sellers were not entitled to either earnout.  Finally, Mr. Torossian will testify about his analysis of expenses and legal fees Sellers billed to MoneyLion, which revealed that these expenses and fees were personal, and improperly and falsely billed to MoneyLion as business expenses.

Mr. Torossian will submit an affidavit in lieu of live direct testimony and will not require an interpreter for cross-examination.

21.    Kenneth VandeVrede (by deposition)

Kenneth VandeVrede is the Chief Executive Officer and Managing Partner of Kalo Brands LLC and Chief Executive Officer and a Director of HillviewMed Inc.  Mr. VandeVrede will testify about a Promissory Note Kalo entered into with Malka in May 2021, that Kalo stopped paying on in the summer of 2021 after a dispute arose with Sellers, and that has not been paid since.  The evidence will show that despite the dispute, Malka recognized the disputed payments that would have been made under the Promissory Note as revenue.  Mr. VandeVerde will also testify that Sellers have attempted to collect on the Promissory Note (which was in favor of Malka, not the Sellers personally) even after they were terminated from Malka.

Mr. VandeVrede's testimony will be presented through deposition designations, and he will not require an interpreter.

**XI.    A designation by each party of deposition testimony to be offered in its case-in-chief and any counter-designation and objections by any other party.**

Pursuant to paragraph 5 of the Scheduling Order (ECF No. 123) and paragraph 6.E.ii of the Court's Individual Rules and Practices in Civil Cases, the parties have served separately their deposition designations, counter-designations, objections and a one-page synopsis (with transcript citations) of their affirmative designations on each other and have also emailed them to the Court. Attached as Exhibits B.1 and B.2 are charts setting out the parties' deposition designations, counter-designations, and objections. As confirmed on the record at the final pretrial conference, all objections are withdrawn.

**XII.   A list by each party of all exhibits to be offered in its case-in-chief, with a single asterisk indicating exhibits to which no party objects on any ground.**

See Exhibits C.1, C.2, and C.3.

**XIII.  A statement of the damages claimed and any other relief sought, including the manner and method used to calculate any claimed damages and a breakdown of the elements of such claimed damages.**

**A.    Sellers' Summary**

*Breach of Contract (Closing Payment Vested Shares).* Sellers seek an Order directing MoneyLion to remove any and all restrictions on the Sellers' Closing Payment shares and to take all lawful steps required to cause Continental to deliver the shares to Sellers in a manner that makes them freely transferable and salable. In the alternative, Sellers request an Order declaring that there is no lawful basis to prevent Sellers from trading their Closing Payment shares.

*Breach of Contract (2021 Earnout Payment Vested Shares).* Sellers seek an Order directing MoneyLion to remove any and all restrictions on the Sellers' 2021 Earnout Payment shares and to take all lawful steps required to cause Continental to deliver the shares to Sellers in a manner that makes them freely transferable and salable. In the alternative, Sellers request an Order declaring that there is no lawful basis to prevent Sellers from trading their 2021 Earnout Payment shares.

26

*Breach of Contract (2022 Earnout Payment).*  Sellers seek an Order of specific performance (as provided in MIPA § 9.12) directing MoneyLion to comply with MIPA § 2.06(v)(B), the 2022 Earnout Payment provision.  Compliance with that section would require MoneyLion to issue 1,825,264 shares to Sellers.  That share count is calculated using a 30-Day VWAP (volume-weighted average price) of $13.70 determined as of an implied 2022 Earnout Payment Issuance Date of May 31, 2023.

In the event the Court determines in its discretion that specific performance is not an appropriate remedy—despite the parties' agreement to it in the MIPA—Sellers would be entitled to money damages caused by MoneyLion's failure to issue the 1,825,264 shares when due.  Those damages should be calculated using the highest intermediate price of MoneyLion's stock on each vesting date, *i.e.*, $87,027,537.99, calculated as follows:

|  | **1Q Vesting** | **2Q Vesting** | **3Q Vesting** | **4Q Vesting** |
|---|---|---|---|---|
| Vested shares | 456,316 | 456,316 | 456,316 | 456,316 |
| Date of vesting | Mar. 31, 2023 | June 30, 2023 | Sept. 30, 2023 | Dec. 31, 2023 |
| First date able to sell | May 31, 2023[4] | June 30, 2023 | Sept. 30, 2023 | Dec. 31, 2023 |
| Highest intermediate price | $19.805 (Aug. 23, 2023) | $25.1827 (Sept. 20, 2023) | $66.47 (Dec. 28, 2023) | $79.26 (Mar. 26, 2024) |
| Value | $9,037,338.38 | $11,491,268.93 | $30,331,324.52 | $36,167,606.16 |

These amounts require prejudgment interest commencing from each vesting date.

*Indemnification.*  Sellers are entitled to recover reasonable attorneys' fees, costs, and expenses, which Sellers continue to incur and which totaled $5,343,812.22 as of October 31, 2024.

---

[4] The implied 2022 Earnout Payment Issuance Date post-dates the first vesting date for the 2022 Earnout Payment because of MoneyLion's delay in submitting its 2022 Earnout Statement (which was late), and its faulty calculations therein.

B.    **MoneyLion's Statement**

MoneyLion seeks actual and compensatory damages for all injuries sustained as a result of the wrongdoing of Sellers.  At a minimum, MoneyLion is entitled to the return of all consideration it paid to Sellers, as well as the restricted shares held by MoneyLion's transfer agent Continental Stock Transfer & Trust Co., and the over $8 million Sellers fraudulently induced MoneyLion to inject into Malka, in addition to MoneyLion's legal fees.

MoneyLion is also owed $185,529.41 in personal expenses that Sellers improperly sought and obtained.  In addition, in submitting those amounts, Messrs. Frommer, Krubich, and Fried breached their fiduciary duties and so the subset of those personal expenses that they submitted, $183,546.01, should be trebled.  MoneyLion is also owed $1,195,000 in damages for business that Pat Capra improperly stole from MoneyLion.

**XIV.    A statement of whether the parties consent to less than a unanimous verdict.**

Not applicable.  This case will be tried without a jury.

Dated: New York, New York
      December 20, 2024

KATTEN MUCHIN ROSENMAN LLP

By: _/s/ Eliot Lauer_____
Eliot Lauer
Julia B. Mosse
Gabriel Hertzberg
Nathaniel Ament-Stone
50 Rockefeller Plaza
New York, New York 10020
T: (212) 940-8800
F: (212) 940-8776
eliot.lauer@katten.com
julia.mosse@katten.com
gabe.hertzberg@katten.com
nathaniel.ament-stone@katten.com

*Attorneys for Sellers*

CAHILL GORDON & REINDEL LLP

By: /s/ Herbert S. Washer_____
Herbert S. Washer
Edward N. Moss
Sheila C. Ramesh
Adam S. Mintz
Danielle Simard
32 Old Slip
New York, New York 10005
212-701-3000
hwasher@cahill.com
emoss@cahill.com
sramesh@cahill.com
amintz@cahill.com
dsimard@cahill.com

*Attorneys for MoneyLion Technologies Inc.
and MoneyLion Inc.*

This Order and the Deposition Designations and Stipulated Facts attached to ECF No. 132, *see* ECF Nos. 132-1, 132-2, 132-3, are adopted by the Court, as modified by any rulings that the Court has made.  Per the discussion at the Final Pretrial Conference today, the exhibit lists also attached to ECF No. 132, *see* ECF Nos. 132-4, 132-5, 132-6, are not so adopted, as the parties will be submitting new versions of those lists - and a stipulation as to admissibility - shortly.

SO ORDERED.

March 27, 2025