# Katten

50 Rockefeller Plaza
New York, NY 10020-1605
+1.212.940.8800 tel
katten.com

ELIOT LAUER
eliot.lauer@katten.com
+1.212.940.6690 direct
+1.212.940.8776 fax

April 18, 2025

**VIA ECF**
Hon. Jesse M. Furman
United States District Court for the Southern District of New York
40 Foley Square
New York, New York 10007

Re:   *Frommer et al. v. MoneyLion Techs. Inc. et al.*, No. 1:23-cv-06339-JMF

Dear Judge Furman:

We submit this letter-motion on behalf of Plaintiffs to compel MoneyLion, pursuant to Federal Rule of Civil Procedure 26(e), to promptly produce documents relating to the drafting and negotiation of MoneyLion's settlement with its representations-and-warranties insurer, Dual.

Plaintiffs requested production of MoneyLion's communications with Dual in December 2023, and MoneyLion responded that it would produce responsive documents. In November 2024, in the run-up to trial, Plaintiffs renewed the request and reminded MoneyLion that its obligations were continuing. MoneyLion responded that discovery was closed and the request was untimely; Plaintiffs warned MoneyLion that it should be prepared to live with its position. *See* PX381 (attached as Ex. A). On January 7, 2025, in its pretrial opposition brief, MoneyLion argued that it was excused from its obligation in the MIPA to pursue a claim against Dual before pursuing claims against Plaintiffs (JX065 at § 8.08(h)) because the Dual policy does not cover losses caused by fraud. *See* ECF No. 160 at 66-67. The clear implication was that MoneyLion was taking no steps to pursue a claim against Dual, because supposedly there was no coverage for fraud—a supposition that is flatly inconsistent with the RWI Policy, which contains no exclusion for fraud. *See* PX153 (attached as Ex. B).

That was the state of the evidentiary record going into the trial. Then, on April 3, 2025, during MoneyLion's redirect examination of Richard Correia, the company's president and CFO, Mr. Correia disclosed for the first time that MoneyLion had, after all, entered into a settlement with Dual. *See* Rough Tr. at 874:22-24 (attached in relevant part as Ex. C). Immediately following the trial, on April 4, 2025, Plaintiffs wrote to MoneyLion requesting "any documents reflecting or relating to that purported settlement."

On April 11, 2025, following a meet-and-confer among counsel, MoneyLion produced the settlement agreement, which was executed on January 31, 2025—just three weeks after MoneyLion stated in its pretrial brief that it had no obligation to pursue Dual because of a purported policy exclusion for fraud. The settlement agreement itself provides no insight into the specific claims that were settled or the negotiations that led to a discounted payment. Following a

# Katten

April 18, 2025
Page 2

second meet-and-confer, MoneyLion again refused to produce its communications and drafts that led to the settlement agreement, with the disingenuous exception that it would produce documents between Mr. Correia and Dual, which is clearly insufficient because Mr. Correia testified that he was not Dual's point of contact at MoneyLion.

Indeed, Mr. Correia's trial testimony during cross-examination about MoneyLion's interactions with Dual—when he pretended to know nothing about the matter—raises serious credibility issues.  Mr. Correia gave the following testimony on cross:

> Q. And am I correct that, other than sending the notice, MoneyLion has taken no steps, commercially reasonable or otherwise, to enforce the insurance policy?
> A. *I don't know if that's right.*
> . . .
> Q. What steps have you taken to recover $7.5 million?
> A. *I think I'd be out of my area of expertise on this one.*
> Q. Is your answer that you cannot testify, as the CFO and someone to whom the legal department reports, that you don't know what steps beyond the notice of claim MoneyLion took?
> A. *I can tell you we have not—we have not taken litigation against DUAL.*
> Q. Have you been in any of the discussions with DUAL or their representatives?
> A. Not that I recall.  I think I may have had maybe a call—I just don't recall exactly, no.
> Q. Have you received any reports from anyone who you say may have been in contact with DUAL?
> A. Reports?  No.

Ex. C at 861:8-862:17 (emph. supplied).  On redirect, however, Mr. Correia suddenly recalled that MoneyLion had settled its RWI claims with Dual:

> Q. [D]id you receive any money from DUAL in a settlement under that policy?
> A. Yes, we did.
> Q. And do you recall, of the $7.5 million policy, how much you received?
> A. I think around 6 million.
> Q. So it's about 80 percent?
> A. About that yes.
> Q. Did you ever tell DUAL that you didn't think you had a good breach of rep claim?
> A. No.  We had to basically put forth the argument in order to actually get those proceeds.
> Q. And when you say "We had to actually put forth the argument," can you, just for the record, explain what you mean, please?

# Katten

April 18, 2025
Page 3

> A. We had to put our case forward and present to DUAL why we felt that we had a claim.
> Q. For a breach of rep?
> A. For a breach of rep, yes.

Ex. C at 874:22-875:15.  Finally, during recross, Mr. Correia gave the following testimony:

> Q. When did you reach a settlement with DUAL?
> A. Oh, I don't remember the exact date, but past—
> Q. Is the settlement reflected in documents?
> A. *I don't know.*
> Q. Well, how did you know that a settlement was reached?
> A. Because I spoke internally, I was asked to approve the transaction.
> . . .
> THE COURT: Can I just follow up.  You said you were asked to approve the settlement?  Is that what you said?
> THE WITNESS: Yes.
> THE COURT: And I presume that would be in writing?  With a public company, I have to imagine that you would have received that request in writing and given your approval in writing; is that correct?
> THE WITNESS: Yes.
> THE COURT: And I would also assume that when you settle for a seven-figure number with an insurance company, there would be some documentation of that between you and the insurance company.  Is that a fair assumption?
> THE WITNESS: Yes.

Ex. C at 935:11-17, 936:1-16.  It is unclear why exactly Mr. Correia prevaricated about his knowledge of the Dual matter when first asked on cross-examination.  It is likewise unclear why MoneyLion: (i) refused to produce its correspondence with Dual before trial; (ii) took the position in its January 2025 pretrial brief that it had no obligation to pursue Dual and no coverage for a fraud claim, when MoneyLion and Dual were in fact on the verge of settlement; and (iii) still, to this day, seeks to conceal how the settlement materialized.  Plaintiffs are entitled to discovery of the drafts and communications to answer these basic questions.

  Plaintiffs thus respectfully request an Order compelling MoneyLion to produce this focused, narrow set of documents regarding its claim against Dual and the settlement thereof.  MoneyLion has represented that the entirety of the discussion occurred between September 2024 and February 2025.  Any such production should be made promptly so that the parties have a chance to bring any relevant material to the Court's attention in advance of post-trial arguments.

# Katten

April 18, 2025
Page 4

Respectfully submitted,

*/s/ Eliot Lauer*

Eliot Lauer

cc:     All counsel of record