# CAHILL GORDON & REINDEL LLP
## 32 OLD SLIP
## NEW YORK, NY 10005

| | | | | |
|---|---|---|---|---|
| DANIEL AMATO | SAMSON A. ENZER | TELEPHONE: (212) 701-3000 | ALIZA R. LEVINE | NIKOLAS X. RODRIGUEZ |
| DANIEL R. ANDERSON | JAMES Z. FANG | WWW.CAHILL.COM | JOEL H. LEVITIN | PETER J. ROONEY |
| PETER J. ARMENIO | GERALD J. FLATTMANN JR. | ——————— | MARK LOFTUS | MATTHEW E. ROSENTHAL |
| HELENE R. BANKS | KIERSTEN A. FLETCHER | | JOHN MacGREGOR | THORN ROSENTHAL |
| ANIRUDH BANSAL | HELENA S. FRANCESCHI | 1990 K STREET, N.W. | MICHAEL MAKHOTIN | TAMMY L. ROY |
| LANDIS C. BEST | JONATHAN J. FRANKEL | WASHINGTON, DC 20006-1181 | TRISTAN E. MANLEY | ANDREW SCHWARTZ |
| CHRISTOPHER BEVAN | SESI GARIMELLA | (202) 862-8900 | BRIAN T. MARKLEY | DARREN SILVER |
| BROCKTON B. BOSSON | ARIEL GOLDMAN | | MEGHAN N. McDERMOTT | JOSIAH M. SLOTNICK |
| DONNA M. BRYAN | PATRICK GORDON | 221 W. 10th STREET, 3rd FLOOR | EDWARD N. MOSS | RICHARD A. STIEGLITZ JR. |
| SARAH W. CHEN | JASON M. HALL | WILMINGTON, DE 19801 | JOEL MOSS | GREGORY STRONG |
| EMEKA C. CHINWUBA | STEPHEN HARPER | (302) 884-0000 | NOAH B. NEWITZ | SEAN R. TIERNEY |
| JAMES J. CLARK | CRAIG M. HOROWITZ | | EDWARD C. O'CALLAGHAN | AMIT TREHAN |
| CHRISTOPHER W. CLEMENT | TIMOTHY B. HOWELL | CAHILL GORDON & REINDEL (UK) LLP | JULIANA OBREGON | HERBERT S. WASHER |
| ANDREW COCHRAN | COLLEEN TRACY JAMES | 20 FENCHURCH STREET | JAVIER ORTIZ | FRANK WEIGAND |
| LEWIS RINAUDO COHEN | DAVID G. JANUSZEWSKI | LONDON EC3M 3BY | DAVID R. OWEN | MILES C. WILEY |
| AYANO K. CREED | BRIAN S. KELLEHER | +44 (0) 20 7920 9800 | JOHN PAPACHRISTOS | PETER G. WILLIAMS |
| SEAN M. DAVIS | ANDREW R. KELLY | ——————— | LUIS R. PENALVER | DAVID WISHENGRAD |
| STUART G. DOWNING | RICHARD KELLY | | SHEILA C. RAMESH | C. ANTHONY WOLFE |
| MICHAEL A. DVORAK | JOEL KURTZBERG | WRITER'S DIRECT NUMBER | MICHAEL W. REDDY | ELIZABETH M. YAHL |
| ADAM M. DWORKIN | TED B. LACEY | | OLEG REZZY | |
| ANASTASIA EFIMOVA | ANDREW E. LEE | | THOMAS ROCHER * | * ADMITTED AS A SOLICITOR IN ENGLAND AND WALES ONLY |

(212) 701-3838

April 22, 2025

Re:   *Frommer et al* v. *MoneyLion Inc. et al*, 23-cv-6339-JMF

Dear Judge Furman:

We write to oppose Sellers' Motion to Compel MoneyLion to produce communications relating to its settlement with DUAL. (ECF 204.) Sellers' Motion—which they filed abruptly while the parties were still meeting and conferring—is a fishing expedition that they seem to hope will uncover something to distract from the fraud that MoneyLion has proven at trial. MoneyLion's communications with DUAL about the settlement are irrelevant to the issues in this case. Sellers know that because they (i) never requested these documents during discovery, and (ii) still cannot articulate their supposed relevance. The Court should deny Sellers' request.

**Background**

Sellers mischaracterize the history, and MoneyLion must make a few corrections. First, Sellers misrepresent the discovery record. Their claim that they "requested production of MoneyLion's communications with DUAL in December 2023" (Mot. at 1) misleadingly suggests that they specifically requested communications about MoneyLion's insurance claim. They did not. Instead, Sellers broadly and generically requested all documents and communications about "Plaintiffs' representations and warranties ***in connection with the Acquisition***," and included "any insurer" in a laundry list of third parties that might have sent or received such communications:

> All documents and communications relating to Plaintiffs' representations and warranties in connection with the Acquisition including, without limitation: (a) Your internal communications and (b) communications with any insurer, accountant, auditor, consultant, attorney, advisor, representative, or other third party regarding Plaintiffs' representations and warranties.

CAHILL GORDON & REINDEL LLP

-2-

MoneyLion *did* produce responsive communications and, as the Court will recall, the parties' trial presentations featured communications about Schedule A that involved DUAL. If Sellers really had wanted communications with DUAL regarding MoneyLion's claim under the policy, they could have just explicitly asked for them (at any time). But they never did.

Second, Sellers misrepresent the pre-trial briefing. Sellers argued in their brief that MoneyLion was required to mitigate its damages by pursuing a claim against DUAL and that, because the policy has a $7.5 million limit, any damages that Sellers owe to MoneyLion should be offset by that entire amount.[1] Relatedly, Sellers argued that MoneyLion was required under Section 8.08(h) of the MIPA to pursue a claim against DUAL. (ECF 138 ¶¶ 585-90.) MoneyLion's response merely pointed out that it (i) had satisfied its obligations under the MIPA, and (ii) was not even required to pursue a claim against DUAL under the MIPA because Section 8.08(h) relates only to indemnified claims for breach of representations and warranties—not fraud. (ECF 160 at 66-67.) Nowhere did MoneyLion "clearly" imply, as Sellers now claim (Mot. at 1), that it was *not* pursuing DUAL. To the contrary, Sellers have known this all along. Sellers concede in their motion that MoneyLion filed an insurance claim. They asked Mr. Correia about the claim at his deposition. And MoneyLion expressly stated in its pre-trial brief not only that it had provided notice to DUAL but that it was "***claiming its attorneys' fees***."[2] (*Id.* at 66.)

Third, Sellers' claim that MoneyLion was "disingenuous" (Mot. at 2) in offering to produce Mr. Correia's communications with DUAL omits the key fact: ***Sellers asked for these communications*** on a meet and confer because they claimed that they needed them to try to impeach Mr. Correia's (truthful) testimony that he did not recall participating in communications with DUAL. That is why MoneyLion offered to search for them. Now, even though Sellers have abandoned their request for this (non-existent) impeachment material, they have devoted more than half of their allotted pages to a gratuitous attempt to attack Mr. Correia's credibility. We understand the strategy. Mr. Correia's conversations with Mr. Frommer (which Mr. Frommer chose not to record and now denies) about Schedule A, GAAP, and supposed "non-cancelable deposits" are an important part of Sellers' fraud. And because Mr. Frommer's credibility has been so thoroughly impeached, Sellers know that they must try to undermine Mr. Correia's credibility. But the testimony that Sellers have copied and pasted does not accomplish their goal. Instead, it shows that Sellers' counsels questions (which potentially sought privileged information) to a non-lawyer about "reports" and "steps . . . taken to recover" were imprecise—and that Mr. Correia accurately disclosed what he knew and recalled in response to MoneyLion's counsel's direct questions.

---

[1] Through a settlement dated January 31, 2025—more than three weeks after the pre-trial briefing concluded—DUAL agreed to pay a confidential amount that represents a significant portion of the policy limit. Because breaches of representations are covered by the policy—and a breach of representation is necessary for fraud—it is arguable whether any damages Sellers owe MoneyLion should be offset by the settlement amount.

[2] Sellers also could have included information about the insurance claim in their 30(b)(6) deposition notice to DUAL. But they did not. And when Sellers' counsel tried to ask about the claim at the deposition, DUAL's counsel objected on scope, and Sellers never followed up.

CAHILL GORDON & REINDEL LLP

-3-

**The Communications' Lack of Relevance**

Promptly after trial—after working through confidentiality issues with DUAL—MoneyLion produced the settlement agreement. (As discussed in Footnote 1 above and in the parties' briefing, the settlement amount contained in the agreement may be relevant to mitigation of damages.) The parties then met and conferred twice by video/phone (and exchanged emails), and at no point could Sellers coherently articulate why—other than to try to impeach Mr. Correia—any communications between MoneyLion and DUAL about the settlement agreement would be relevant to this case. In fact, Sellers filed this Motion instead of putting the answer to that question in writing (something MoneyLion requested multiple times). *See* Exhibit 1 at 1-2.

Sellers' Motion still leaves this key question unanswered. Sellers claim that they are "entitled to discovery of the drafts and communications" to answer four "basic questions" (Mot. at 3). But those questions are either irrelevant or would actually ***not*** be answered by production of the discovery Sellers seek:

- *Question 1: Why did Mr. Correia prevaricate about his knowledge of the DUAL matter?* As discussed above, he did not. In any event, (i) he has no communications with DUAL, and (ii) Sellers are not seeking his internal communications. (Exhibit 1 at 2.)

- *Question 2: Why did MoneyLion refuse to produce its correspondence with DUAL?* As discussed above, MoneyLion produced the documents that Sellers requested. If Sellers had actually requested documents relating to MoneyLion's claim under the insurance policy against DUAL (at any time), MoneyLion would have responded to that request.

- *Question 3: Why did MoneyLion take the position in its January 2025 pretrial brief that it had no obligation to pursue DUAL and no coverage for a fraud claim, when it was on the verge of Settlement?* MoneyLion took the position in its brief that it had no obligation to pursue DUAL because it had no obligation to pursue DUAL under the MIPA. And the settlement was not entered into for another three weeks.

- *Question 4: Why is MoneyLion seeking to conceal how the settlement materialized?* The settlement agreement has been produced. How the settlement materialized is not remotely relevant to any claim or defense in this case. And Sellers cannot come close to meeting the heightened discovery standard for settlement communications that could be relevant here. *See also Accent Delight Int'l Ltd.* v. *Sotheby's*, 505 F. Supp. 3d 281, 287–88 (S.D.N.Y. 2020) (Furman, J).

CAHILL GORDON & REINDEL LLP

-4-

                    Respectfully submitted,

                    /s/ Edward N. Moss

                    Edward N. Moss

The Honorable Jesse M. Furman  
United States District Judge  
United States District Court for the Southern District of New York  
40 Foley Square  
New York, NY 10007  

Enclosures

cc:    All counsel of record (via ECF)