# CAHILL GORDON & REINDEL LLP

32 OLD SLIP
NEW YORK, NY 10005

TELEPHONE: (212) 701-3000
WWW.CAHILL.COM

| 1990 K STREET, N.W.<br>WASHINGTON, DC 20006<br>(202) 862-8900 | 221 W. 10th STREET<br>WILMINGTON, DE 19801<br>(302) 884-0000 | 20 FENCHURCH STREET<br>LONDON EC3M 3BY<br>+44 (0) 20 7920 9800 |
|---|---|---|

(212) 701-3838

April 30, 2025

Re: *Frommer, et al.* v. *MoneyLion Technologies Inc., et al.*, 23-cv-6339-JMF

Dear Judge Furman:

We write on behalf of MoneyLion Technologies Inc. and MoneyLion Inc. in response to Sellers' April 24, 2025 Letter Regarding Supplemental Authorities. ECF No. 210. Sellers claim their new authorities are "responsive to issues first raised by MoneyLion in its opposition memorandum filed on January 7, 2025." *Id.* at 1. If that is the case, Sellers' submission appears to be either untimely or an attempt to submit post-trial briefing without the Court's permission; however, to the extent the Court considers Sellers' new authorities, MoneyLion respectfully requests that the Court also consider the responsive authorities discussed below.[1]

**The Reasonable Relationship Requirement Following *Ministers v. Snow*.** Sellers cite *Ministers and Missionaries Benefit Board* v. *Snow*, 26 N.Y.3d 466, 471 (2015), and subsequent lower court cases, presumably for the proposition that a contractual choice of law provision forecloses the Court from assessing whether a contract bears a reasonable relationship to the stipulated law. ECF No. 210 at 1. But this conflicts with controlling decisions of the Second Circuit, holding that the reasonable relationship analysis must be performed notwithstanding a contractual choice of law clause. *See United States* v. *Moseley,* 980 F.3d 9, 20 (2d Cir. 2020) (under New York law, "contractual selection of governing law is generally determinative so long as the State selected has sufficient contacts with the transaction"); *DarkPulse, Inc.* v. *Crown Bridge Partners LLC*, 2024 WL 3872725, at *2 (2d Cir. Aug. 19, 2024) (summary order) (under New York law, "[c]ourts will enforce a choice-of-law clause so long as the chosen law bears a reasonable relationship to the parties or the transaction"); *see also Willis Re Inc.* v. *Herriott*, 550 F. Supp. 3d 68, 94 (S.D.N.Y. 2021) (Furman, J.) (while "*Moseley* is difficult to square with *Ministers & Missionaries*," "this Court is technically bound to follow the Second Circuit's interpretation of New York law unless and until it is overruled by the Second Circuit itself or it is undermined by a more recent decision regarding New York law from the New York Court of Appeals" (quotations omitted)); *BDO USA, P.C.* v. *Rojas*, 2024 WL 3729581, at *10 (S.D.N.Y. Aug. 8, 2024) (McMahon, J.) (following *Moseley*, while "the issue of exceptions to the rule of *Ministers* remain[s] unresolved"); *Cambridge Cap. LLC* v. *Ruby Has LLC*, 675 F. Supp. 3d 363, 418 (S.D.N.Y. 2023) (Liman, J.) ("[E]ven after the New York Court of Appeal's decision in

---

[1] MoneyLion will respond to other arguments first raised in Sellers' January 7, 2025 Opposition (ECF No. 158) during closing arguments, as we expect the Court intended.

*Ministers* . . . a court should consider whether a choice-of-law provision bears a reasonable relationship to the parties or transaction." (citations and quotations omitted)).

**Whether Incorporation Alone Creates a Reasonable Relationship to Delaware.** Sellers cite *EMA Financial, LLC* v. *NFusz, Inc.*, 444 F. Supp. 3d 530, 541 (S.D.N.Y. 2020) (Buchwald, J.), presumably for the proposition that MoneyLion's incorporation in Delaware is by itself sufficient to enforce the MIPA's Delaware choice of law provision. ECF No. 210 at 1. But *NFusz* was considered and rejected by Judge Liman's more recent opinion in *Cambridge Capital*, which after exhaustively surveying the relevant authorities, held that "the better reasoned approach is that incorporation alone is insufficient to establish a reasonable relationship." 675 F. Supp. 3d at 421; *see also La. Revitalization Fund LLC* v. *Starr Surplus Lines Ins. Co.*, 2024 WL 1337617, at *6 (S.D.N.Y. Mar. 27, 2024) (Figueredo, Mag. J.) ("[W]hen the *only* contact of the relevant transaction with the state selected in the contract is that one party was incorporated there, courts have found no reasonable relationship.").[2]

**Enforceability of the MIPA's Specific Performance Clause.** Sellers cite several cases to argue that the MIPA's specific performance clause should be enforced without regard to whether they can actually meet the requirements for equitable relief. ECF No. 210 at 1. But a Federal court cannot exercise its equitable jurisdiction unless the traditional elements of equitable relief are satisfied—including the essential requirement that money damages would be inadequate to compensate harm—even where contracting parties selected a state's decisional law. *See Perfect Fit Indus., Inc.* v. *Acme Quilting Co.*, 646 F.2d 800, 806 (2d Cir. 1981) ("State law does not govern the scope of the equity powers of the federal court; and this is so even when state law supplies the rule of decision." (citing *Guaranty Trust Co.* v. *York*, 326 U.S. 99, 106 (1945))); *see also Guaranty Tr.*, 326 U.S. at 105–06 (Federal equitable relief may not issue unless a "plain, adequate, and complete remedy at law" is lacking; "[t]hat a State may authorize its courts to give equitable relief unhampered by any or all such restrictions cannot remove these fetters from the federal courts."); *EMA Fin.* v. *Vystar Corp.*, 2020 WL 1233608, at *4 (S.D.N.Y. Mar. 13, 2020) (Carter, J.) (although parties agreed that Delaware law governed share conversion agreement, applying Federal standard to request for injunction to issue shares; "Where, as here, an equitable remedy stipulation exists, courts in this Circuit treat such a provision as *persuasive* evidence that [Plaintiff] will suffer from irreparable harm absent an injunction, rather than dispositive evidence. . . . Because Defendant's shares are available on the open market and Plaintiff has failed to allege Defendant's insolvency, the Court finds, **despite the existence of a stipulation,** Plaintiff has not sufficiently alleged it is entitled to a permanent injunction." (second emphasis added) (citations and quotations omitted)); *Cabela's LLC* v. *Highby*, 362 F. Supp. 3d 208, 224 (D. Del. 2019)

---

[2] While this Court noted in *Willis Re* that "most courts [have] deemed one party's incorporation in the state of the parties' chosen law sufficient for purposes of the 'reasonable relationship' test," 550 F. Supp. 3d at 95, the Court found a reasonable relationship on the grounds that Willis Re was incorporated **and maintained its principal place of business in New York**. *Cf. Cambridge Cap.*, 675 F. Supp. 3d 363 at 422 (because "[a] corporation's principal place of business will generally have some sense of permanency . . .[t]he law of the principal place of business of one of the parties to a contract thus is entitled to be honored" in a contractual stipulation). MoneyLion has its principal place of business in New York, not in Delaware.

CAHILL GORDON & REINDEL LLP

-3-

("[M]ost federal courts do not consider a contractual stipulation dispositive for purposes of showing irreparable harm."), *aff'd*, 801 F. App'x 48 (3d Cir. 2020).

Moreover, even if Federal law did not control and Delaware law did—which it does not—the lack of irreparable harm would be a sufficient basis to deny specific performance, despite a contractual specific performance clause. *See Clevinger* v. *Advocacy Holdings, Inc.*, 2023 WL 5220570, at *3 (D.D.C. Aug. 15, 2023) (Cobb, J.) (denying preliminary injunction; "even if Delaware law governs the Court's determination of what constitutes irreparable harm, Delaware law is not inconsistent with this Circuit's precedent"; acknowledging Delaware authority "that stands for the proposition that courts are not required to treat contractual stipulations regarding irreparable harm as dispositive if the facts otherwise do not establish irreparable harm" (citation and quotations omitted)), *aff'd*, 2025 WL 1197927 (D.C. Cir. Apr. 25, 2025); *Hadeed* v. *Advanced Vascular Res. of Johnstown, LLC*, 2016 WL 7176658 at *3–4 (W.D. Pa. Dec. 8, 2016) (denying preliminary injunctive relief despite irreparable harm stipulation in Delaware-governed agreement; "Delaware courts take contractual irreparable-harm provisions into consideration, but . . . [stipulations] are not necessarily dispositive as to whether irreparable harm exists.").

***Imputation and Reasonable Reliance.***  Sellers cite two cases in support of their argument that certain employees' knowledge should be imputed to MoneyLion for the purpose of assessing its reasonable reliance. ECF No. 210 at 1–2 (citing *Savik, Murray & Aurora Constr. Mgmt. Co.* v. *ITT Hartford Ins. Grp.*, 86 A.D.3d 490, 493-94 (1st Dept. 2011); *Terra Sec. ASA; Konkursbo v. Citigroup, Inc*., 820 F. Supp. 2d 541, 546 (S.D.N.Y. 2011)). Each of these cases relies on the doctrine outlined in *Kirschner* v. *KPMG LLP*, 15 N.Y.3d 446, 465 (2010), which addressed the imputation of *senior management's fraud to a corporation* in applying the *in pari delicto* doctrine. *Id.* at 466–69, 476–77. This is an entirely different question from the imputation of employees' knowledge to a corporate fraud *victim* to assess *reliance*, particularly where the perpetrator made false statements to an individual agent of that corporate victim to induce a transaction. *Cf. Vigortone Ag Prods., Inc.* v. *PM Ag Prods., Inc.*, 217 F. Supp. 2d 858, 866 (N.D. Ill. 2001) (refusing to impute knowledge to company where the corporate agent with knowledge was not the individual who was deceived); *Chicago Title & Tr. Co.* v. *First Arlington Nat'l Bank*, 454 N.E.2d 723, 728 (Ill. App. Ct. 1983) ("To blindly preclude recovery for deceit practiced upon a corporate agent merely because a fellow employee knew the truth would make corporations safe marks for fraud.").

Here, Sellers' imputation arguments are inapposite because MoneyLion was defrauded through its agents who negotiated, approved, and signed the MIPA, Dee Choubey and Rick Correia. *See In re Fine Host Corp. Sec. Litig.*, 25 F. Supp. 2d 61, 71 (D. Conn. 1998) ("Under well-settled principles of agency law, one who defrauds an agent is liable to the principal." (citing Restatement (Second) of Agency § 315 (1958) ("A person who fraudulently obtains a contract through . . . an agent acting within the scope of his power to bind the principal . . . is subject to liability to the principal whether the fraud is practiced upon the agent or upon the principal."))). Whether other employees (such as Michelle Lee, Mike Scalia, or Erika Nuno) had notice of the fraud (particularly after the fact) is irrelevant unless they communicated their knowledge to Mr.

CAHILL GORDON & REINDEL LLP

-4-

Choubey or Mr. Correia, which the evidence shows they did not. *See Chicago Title & Tr. Co.*, 454 N.E.2d at 728 ("[A] tortfeasor does not automatically escape liability for deceit merely because a defrauded corporation had imputed knowledge of the truth."); *Vigortone*, 217 F. Supp. 2d at 866 ("[E]xamination of the reliance element focuses on the knowledge of the agent who was deceived."); 3 Am. Jur. 2d Agency § 235 (2025) (fraud-on-the-agent theory applies "where it is the agent who not only places reliance on the misrepresentations, but also makes the decision and takes action based on the misrepresentations"). In any event, the trial record makes clear that (1) no MoneyLion employee was on notice of Sellers' *true* accounting practices before 2023; and (2) the overwhelming majority of the supposed "notice" on which Sellers rely is post-closing.

Finally, the common-law presumption of imputation applied by *Kirschner* is not absolute, and does not allow a party to escape liability for its own fraud. *See First Ala. Bank of Montgomery, N.A.* v. *First State Ins. Co.*, 899 F.2d 1045, 1060 (11th Cir. 1990) (a wrongdoer "cannot use agency law's constructive knowledge rule to shield itself from liability for its fraudulent misrepresentation. The rule is an equitable one which cannot be employed by those with unclean hands"); *BCCI Holdings (Luxembourg), S.A.* v. *Clifford*, 964 F. Supp. 468, 480 (D.D.C. 1997) ("That the imputation doctrine is not available for the benefit of wrongdoers who seek to shield their wrongful acts is a well-established principle."); 3 Am. Jur. 2d Agency § 233 (2025) ("The rule imputing an agent's knowledge to the principal is designed to protect only those who exercise good faith, and is not intended to serve as a shield for unfair dealing by the third person.").

\* \* \*

MoneyLion will be prepared to address these legal issues further in its closing arguments, or as the Court requests.

          Respectfully submitted,

          */s/* Edward N. Moss

          Edward N. Moss

The Honorable Jesse M. Furman
United States District Judge
United States District Court for the Southern District of New York
40 Foley Square
New York, NY 10007

VIA ECF

Cc:    All counsel of record (via ECF)